**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT MORRIS and MICHELLE MORRIS, | 08-CV-01422-OWW-GSA |
| Plaintiffs, | MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT |
| v. | |
| FRESNO POLICE DEPARTMENT, OFFICERS CHRISTOPHER LONG, JEREMY DEMOSS, | |
| Defendants. | |

## I.   INTRODUCTION

Before the court is a motion to dismiss or, in the alternative, a motion for a more definite statement, brought by defendants City of Fresno Police Department, Officer Christopher Long and Officer Jeremy DeMoss (collectively "Defendants"). The motion is directed at the claims asserted by *pro se* plaintiffs Robert Morris and Michelle Morris in their Third Amended Complaint ("TAC"). Plaintiffs, who are proceeding *in forma pauperis*, oppose the motion. The following background facts are taken from the TAC (Doc. 37) and other documents on file in this case.

## II.   BACKGROUND

### A.   Brief Procedural History

Plaintiffs filed their initial complaint on September 23, 2008, and applied for and were granted the right to proceed *in forma pauperis* ("IFP"). Given their IFP status, the magistrate judge screened their initial complaint. *See* 28 U.S.C. § 1915(e)(2). The initial complaint contained claims for "False Arrest and Imprisonment," "Police Brutality," "Violation of Right to Due

1

Process of Law," "Conspiracy to Deprive Equal Protection of Laws," "Physical and Emotional Problems," and "Officer Misconduct." The magistrate judge dismissed the complaint with leave to amend. (Doc. 15.)

Plaintiffs filed a first amended complaint which the magistrate judge screened and dismissed, again with leave to amend. (Doc. 29.) Plaintiffs filed a second amended complaint, it was screened, and the magistrate judge issued findings and recommendations which recommended that certain claims proceed while others, along with a named defendant (Brendan Rhames), be dismissed. (Doc. 31.)

In response to the magistrate judge's findings and recommendations, Plaintiffs filed a document entitled "Objection To Magistrate Judges Findings and Recommendation With Request For Amendment To Complaint." In this submission Plaintiffs agreed to voluntarily dismiss one claim, i.e., the false arrest and imprisonment claim. Plaintiffs also requested to add a claim for "municipal liability."

In an order adopting the magistrate judge's findings and recommendations, Plaintiffs' request to add a claim for municipal liability was construed as a motion to amend the complaint. This motion to amend was referred to the magistrate judge for consideration. In light of Plaintiffs' voluntarily dismissal of the false arrest and imprisonment claim, that claim was dismissed without prejudice and the magistrate judge's findings and recommendations were otherwise adopted. (Doc. 35 at 2.)

Subsequently, the magistrate judge granted Plaintiffs' motion to amend to add the municipal liability claim and Plaintiffs' TAC

followed. (Doc. 36.)   The magistrate judge reviewed the TAC and concluded, in an order dated August 4, 2009, that Plaintiffs appeared to state cognizable claims for relief. (Doc. 38.)   Among other things, that order stated "service is appropriate" for Defendant "Fresno Police Department."

B.   **Plaintiffs' TAC**

Plaintiffs' TAC names three defendants: the Fresno Police Department, Officer Christopher Long, and Officer Jeremy DeMoss. The beginning of the TAC reads:

> Plaintiffs Mr. & Mrs. Morris claim that their Constitutional rights were violated.   Actions claimed under 42 U.S.C. § 1983, 4th Amendment, also under California State law.   The District Court has jurisdiction over state claims alleging Municipal Liability, a Monell claim, when civil in nature.

(Doc. 37 at 1.)   The remainder of the TAC consists of two sections: one section contains "Allegations by Plaintiff Mrs. Morris" followed by her request for relief, and another section contains "Allegations by Plaintiff Mr. Morris" followed by his request for relief.

In her allegations, Mrs. Morris asserts a claim for excessive force against officer DeMoss.   In his allegations, Mr. Morris asserts a claim for excessive force against officer Long, a defamation claim against officer Long, and a "municipal liability" claim against the Fresno Police Department.   Both plaintiffs request "unlimited" and punitive damages.

    1.   **Mrs. Morris's Allegations**

        a.   **Excessive Force**

In her allegations, Mrs. Morris asserts a claim for "Excessive Force" against officer DeMoss stemming from an incident on

3

"10/28/09."   According to the TAC, Mrs. Morris was "a victim of an assault and robbery," presumably by some third party.   Even though "Mrs. Morris hadn't broke no laws" she was "placed into handcuffs for unknown reasons."   The TAC alleges that, without warning, Officer DeMoss "snatched Plaintiff up off the curb," "man-handle[d]" her and then, for "unknown reasons," drove her home:

> Officer DeMoss snatched Plaintiff up off the curb by grabbing her by the right elbow and lifting her straight up, quickly and unexpectant [sic]. Officer DeMoss gave no warning of what he was going to do. Plaintiff Mrs. Morris was man-handle[d] in such a way that so much Force was used in grabbing her elbow, that the Off[]icer left large bruses [sic] on the insides of Plaintiffs fore-arm and her bicep.   Three to four inches in dameter [sic], Plaintiff wasn't arrested, but for unknown reasons taken to her residence, 1/2 block away and just dropped off, by Officer DeMoss.

(Doc. 37 at 2 (emphasis omitted).)   Mrs. Morris contends that "Officer DeMoss's actions were in violation of her federal Constitutional rights." (*Id.*)

   2.   Mr. Morris's Allegations

      a.   Excessive Force

   Mr. Morris asserts an "Excessive Force" claim against Officer Long stemming from an undated incident where Mr. Morris had his blood drawn.   "During a blood draw" of Mr. Morris, Officer Long used an "arm-bar lock" on Mr. Morris and used "so much force that [his] shoulder was disclocated[] and his ligament torn." Although not clear, it appears Mr. Morris is alleging that Officer Long also threatened to break Mr. Morris's arm:

> Officer Long screamed at the Plaintiff telling the Plaintiff Mr. Morris, 'to move so that (LONG) could brake

4

1      [sic] the arm.' [¹]

2  (Doc. 37 at 3 (emphasis omitted).)  Mr. Morris asserts that Officer

3  Long's actions "were unnecessary" because Mr. Morris was "very

4  cooperative," "calm," "quiet" and "quite nice" throughout the

5  encounter and he "never refused."  Mr. Morris asserts that Officer

6  Long's action violated his "Federal Constitutional rights." (*Id*.)

7          **b.   Municipal Liability**

8      Mr. Morris asserts a claim for "Municipal Liability" against

9  the Fresno Police Department based on its policy, custom and/or

10 practice regarding blood draws.  Mr. Morris apparently attributes

11 the "Forced Blood-draw" performed on him to this policy, custom,

12 and or/practice.

13         **c.   Defamation**

14     Finally, Mr. Morris asserts a claim for defamation based on

15 statements Officer Long made "under oath" on three occasions at a

16 DMV administrative hearing.  The TAC asserts:

17         On 04/29/08, Officer Long stated the D.M.V.
           administ[r]ative hearing for the Plaintiff Mr. Morris.
18         While under oath, clearly stated that Mrs. Morris was,
           'placed under arrest for being drunk in public.' That
19         Officer DeMoss had taken Mrs. Morris to jail and that she
           was booked in.'
20
           [A]lso on 06/12/08, Officer Long once again stated to the
21         D.M.V. hearing officer, while under oath. 'Mrs. Morris
           was taken into custody for violation PC647F.'
22
           Officer Long made these statements to the hearing Officer
23         in attempt to discredit Mrs. Morris.

24         Officer DeMoss stated under oath on 09/10/08, at the
           D.M.V hearing, ' I transported her (Mrs. Morris) home.'
25
26 (Doc. 37 at 3 (emphasis omitted).)  At the end of the defamation

27 ─────────────────

28     [¹] It is unclear whether the word "brake" should be "break" or
   perhaps "brace."

claim, a single incomplete sentence reads: "A violation of California law." (*Id*. at 4.)

C.  **Summary Of Defendants' Arguments**

Defendants' motion attacks all claims asserted in the TAC.

1.  **Motion To Dismiss**

a.  **Excessive Force**

Defendants' move to dismiss both Mrs. Morris's and Mr. Morris's excessive force claims, arguing that these claims are insufficiently pled because the TAC does not allege that Officer DeMoss or Long were acting under color of law at the time of the alleged constitutional violations.

b.  **Municipal Liability**

Defendants move to dismiss the § 1983 claim asserted against the Fresno Police Department on the ground that it is not the proper party to this claim.

c.  **Defamation**

Defendants move to dismiss the defamation claim on several grounds.  To the extent that Mr. Morris attempts to assert a *federal* defamation claim cognizable under § 1983, such a claim is insufficiently pled.  To the extent that Mr. Morris asserts a *state law* defamation claim, Defendants argue that this claim fails because: (i) the claim is based on statements that are protected by an absolute privilege; and (ii) the TAC does not plead compliance with the California Government Claims Act.

2.  **Motion For A More Definite Statement**

a.  **Excessive Force**

Defendants also move for a more definite statement of the § 1983 excessive force claims, arguing that it is unclear when the

**6**

alleged excessive force incidents occurred.   According to Defendants, this lack of clarity prevents them from conducting a statute of limitations analysis.

As to Mrs. Morris's claim, Defendants note that she alleges, in the TAC, that the excessive force incident with Officer DeMoss occurred on "10/28/09."   However, the TAC was filed before "10/28/09."  As to Mr. Morris's claim, Defendants note that the TAC does not specify when the blood draw incident with Officer Long occurred.   Apart from the lack of a specified date, Defendants further argue that Mr. Morris's excessive force claim is otherwise "impermissibly vague."

### b.   Municipal Liability

Defendants move for a more definite statement of the municipal liability claim, arguing that the "basis" of the *Monell* claim is unclear.

### III.   STANDARDS OF DECISION

**A.   Motion To Dismiss**

Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).   To sufficiently state a claim to relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id*.   Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.   In

other words, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted).  The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

This standard, which is derived from Rule 8, applies to pleadings drafted by attorneys as well as *pro se* litigants. *See Iqbal,* 129 S. Ct. at 1953 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions.'" (quoting Fed. R. Civ. P. 1)); *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) (applying *Twombly* to *pro se* complaint); *Wisdom v. Katz*, 308 F. App'x 120, 121 (2009) (same).  Nevertheless, when reviewing the sufficiency of a complaint drafted by a *pro se* litigant, the pleading is to be "liberally construed" and viewed "less stringent[ly]" than formal pleadings prepared by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations" in the pleading under attack. *Iqbal*, 129 S. Ct. at 1950. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see, e.g., Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009).

Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri*, 901 F.2d at 699, or where the allegations on their face "show that relief is barred" for some legal reason, *Jones v. Bock*, 549 U.S. 199, 215 (2007).

B. **Motion For A More Definite Statement**

"If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Under Rule 12(e), "[a] party may move for a more definite statement of a pleading" when it is "so vague or ambiguous that the party cannot reasonably prepare a response."

A Rule 12(e) motion is proper only if the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted, i.e., so vague that the defendant cannot begin to frame a response. *See Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F.Supp. 940, 949 (E.D. Cal. 1981). The motion must be denied if the complaint is specific enough to notify defendant of the substance of the claim being asserted. *See Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996); *see also San Bernardino Pub. Employees Ass'n v. Stout*, 946 F. Supp. 790, 804 (C.D. Cal. 1996) ("A motion for a more definite statement is used to attack unintelligibility, not mere lack of detail, and a complaint is sufficient if it is specific enough to apprise the

9

defendant of the substance of the claim asserted against him or her.").

## IV.   DISCUSSION AND ANALYSIS

### A.   Motion To Dismiss

#### 1.   Excessive Force Claims

Section 1983 provides:

> Every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State* or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (emphasis added).  Section "1983 creates a federal cause of action for deprivation, under color of state law, of rights guaranteed by the United States Constitution or laws." *San Bernardino Physicians' Servs. Med. Group, Inc. v. County of San Bernardino*, 825 F.2d 1404, 1407 (9th Cir. 1987).

"To state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). With respect to the latter requirement, "[t]here is no rigid formula for determining" whether a person was acting under color of state law. *Id.* at 1068.  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United*

10

*States v. Classic*, 313 U.S. 299, 326 (1941)).

Under color of state law means "under pretense of law," and "[a] police officer's actions are under pretense of law only if they are in some way related to the performance of his official duties." *Huffman v. County of Los Angeles*, 147 F.3d 1054, 1058 (9th Cir. 1998) (internal quotation marks omitted). "[A]ctions taken under color of state law must be related to the state authority conferred on the actor, even though the actions are not actually permitted by the authority." *Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476, 480 (9th Cir. 1991) (internal quotation marks omitted).

A police officer acts under color of state law when the officer is "acting, purporting, or pretending to act in the performance of his or her official duties." *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000). "Officers who engage in confrontations for personal reasons unrelated to law enforcement, and do not purport[ ] or pretend[ ] to be officers, do not act under color of law." *Huffman*, 147 F.3d at 1058 (alterations in original) (internal quotation marks omitted).

Merely because the person is a "police officer does not mean that everything he [or she] does is" under color of state law. *Gritchen v. Collier*, 254 F.3d 807, 812 (9th Cir. 2001). Rather, whether a police officer "is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *Anderson*, 451 F.3d at 1068.

To survive a Rule 12(b)(6) motion, the pleading must allege facts suggesting that the defendants were acting under color of state law at the time of the alleged constitutional violation. *See*

11

1

2

*Gritchen*, 254 F.3d at 812; *Davis v. Cal. W. Sch. of Law*, *CA*, No. 09-55187, 2009 WL 3415991, at *1 (9th Cir. Oct. 23, 2009).

3

### a.   Mrs. Morris's excessive force claim

4

5

6

7

8

As to Mrs. Morris's excessive force claim, the TAC fails to allege facts sufficient to suggest that Officer DeMoss was acting under color of law when he "handcuffed her for unknown reasons," "snatched Plaintiff up off the curb," "man-handle[d]" her and drove her home.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Missing from the TAC are any facts which would suggest that this encounter was somehow related to Officer DeMoss's performance of his duties as a police officer.[2]  For example, the TAC does not explain the context in which Officer Demoss encountered Mrs. Morris on the curb, what he was doing there, what Officer DeMoss was wearing at the time of the incident (his uniform or plain clothes), or whether he drove Mrs. Morris home in a police car or a civilian vehicle.  While the TAC indicates that Officer DeMoss is a police officer, this fact alone does not mean that Officer DeMoss was acting in his capacity as a police officer, or purporting or pretending to act as a police officer, at the time he encountered Mrs. Morris on the curb, snatched her up and allegedly used "excessive force" on her.  The complaint does not describe what Mrs. Morris was doing.

23

24

25

26

There are no facts in the TAC to suggest Office Demoss acted under color of law.  Accordingly, the excessive force claim is insufficiently pled.  Defendants' motion to dismiss Mrs. Morris's excessive force claim on this ground is GRANTED WITH LEAVE TO

27

28

[2] **The TAC does not even contain the conclusory statement that Officer DeMoss was acting under "color of state law."**

AMEND.

### b.   Mr. Morris's excessive force claim

Mr. Morris's claim is different.  Liberally construed, the TAC alleges facts sufficient to suggest that Officer Long was acting under color of law at the time of the alleged excessive force used on Mr. Morris.

The TAC alleges that Officer Long is a police officer who allegedly used excessive force on Mr. Morris "during a blood draw." The TAC indicates that Officer Long testified at a DMV hearing regarding this blood draw and also testified regarding the Fresno Police Department's policy, custom and/or practice on blood draws.

Liberally construing the TAC, and drawing reasonable inferences from its factual content, the TAC suggests that Officer Long was acting in his capacity as a police officer at the time of the alleged use of excessive force.  As part of their official duties, police officers routinely conduct tests on individuals to determine whether they are intoxicated.  The TAC indicates that instead of using a field-sobriety test or breathalyzer on Mr. Morris, Officer Long proceeded with a "forced-blood draw," presumably to determine whether Mr. Morris was intoxicated.  The TAC suggests that Officer Long was acting as a police officer when securing a blood draw from Mr. Morris and when the alleged excessive force occurred during the blood draw.  The TAC implies that the alleged excessive force was used in furtherance of, or in connection with, the blood draw, but the force was unnecessary because Mr. Morris was cooperative and did not refuse the draw.

The TAC contains enough facts to suggest that, at the time of the alleged excessive force incident, Officer Long was acting under

color of law.  Defendants' motion to dismiss Mr. Morris's excessive force claim on this ground is DENIED.

### 2.  Municipal Liability

Defendants argue that the Fresno Police Department is not the proper party to Plaintiffs' § 1983 claim. *See Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991) ("Naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality."); *Vance v. County of Santa Clara*, 928 F. Supp. 993, 995-96 (N.D. Cal. 1996) (same); *see also United States v. Kama*, 394 F.3d 1236, 1239-40 (9th Cir. 2005) (Ferguson, J., concurring) ("[M]unicipal police departments and bureaus are generally not considered 'persons' within the meaning of 42 U.S.C. § 1983.").  At oral argument on the motion, Plaintiffs stated that they intended to sue the City of Fresno, not the Fresno Police Department.  It appears that, among others, an order issued by the Magistrate Judge dated July 9, 2009, may have dissuaded Plaintiffs from suing the City and caused them to name the Police Department instead.  In view of this confusion, Plaintiffs will be permitted to amend their complaint to name the City of Fresno as a defendant, instead of the Fresno Police Department.

"Municipalities," like the City of Fresno, "are 'persons' under 42 U.S.C. § 1983 and thus may be liable for causing a constitutional deprivation*." Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).  In a § 1983 case, a municipality cannot be liable for a constitutional violation on the basis of respondeat superior. *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978).  Rather, a municipality is "liable only when 'action pursuant to official municipal policy of some nature caused a

**14**

constitutional tort.'" *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (quoting *Monell*, 436 U.S. at 691).   The "official municipal policy" can be an expressly adopted policy or "a longstanding practice or custom." *Id*. (internal quotation marks omitted).

For *Monell* purposes, the policies of a city's police department are the policies of the city itself "because the policies set by the [d]epartment and its Chief may be fairly said to represent official [City] policy on police matters." *Shaw v. State of Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 610 (9th Cir. 1986) (internal quotation marks omitted) (second alteration in original); *cf. Brandon v. Holt*, 469 U.S. 464, 472 (1985) (recognizing that the actions of city *department* officials in their official capacity are "equated with the actions of the city itself").   Accordingly, the *Monell* claim in the TAC is properly asserted against the City of Fresno.

### 3.   Defamation Claim

#### a.   Defamation Under § 1983

Defendants argue that, to the extent Mr. Morris attempts to assert a *federal law* defamation claim under § 1983, this claim is insufficiently pled.

To sustain a claim under § 1983 there must be an underlying violation of the United States Constitution or federal law.   A pure state law violation is not enough.   If Mr. Morris's defamation claim is nothing more than an alleged violation of state law, it cannot give rise to § 1983 liability.   There are situations, however, in which defamation may be actionable under § 1983.   As explained in *Hart v. Parks*, 450 F.3d 1059, 1069-70 (9th Cir. 2006)

(emphasis omitted):

> Damage to reputation alone is not actionable under §
> 1983, *Paul v. Davis*, 424 U.S. 693, 711-12 (1976),
> although a § 1983 claim may lie if [the plaintiff] was
> stigmatized in connection with the denial of a 'more
> tangible' interest. *Id*. at 701-02; *see also Cooper v.
> Dupnik*, 924 F.2d 1520, 1532 (9th Cir. 1991).   This is
> known as the 'stigma-plus' test, and can be satisfied in
> two ways.
>
> First, the plaintiff must show that the injury to his
> reputation was inflicted in connection with the
> deprivation of a federally protected right. *See, e.g.,
> Gobel v. Maricopa County*, 867 F.2d 1201, 1205 (9th Cir.
> 1989).   Because police had probable cause to arrest him,
> Hart cannot show an injury to his reputation in
> connection with the deprivation of a federally protected
> right.    Second, the plaintiff must show that the injury
> to reputation caused the denial of a federally protected
> right[.]

See also *Herb Hallman Chevrolet, Inc. v. Nash-Holmes*, 169 F.3d 636,

645 (9th Cir. 1999) (referring to it as a 'defamation-plus' claim).

Mr. Morris's defamation claim is sparsely described.   Mr.

Morris alleges "defamation by Officer Long" and he identifies some

statements Officer Long made under oath at a DMV hearing.   Officer

Long's statements under oath relate to "Mrs. Morris."

Mr. Morris does not sufficiently allege a "defamation-plus"

claim cognizable under § 1983.   Mr. Morris does not allege any

injury to *his* reputation flowing from these statements, let alone

that the injury to his reputation was either inflicted in

connection with the deprivation of a federally protected right or

caused the denial of a federally protected right.

With respect to the defamation claim, in opposition,

Plaintiffs argue that "plaintiff[s] will assert their right to the

1983 claim, because, Federal Court has jurisdiction over state

claims, when there [sic] [c]ivil in nature. Federal Courts may

exercise supplemental jurisdiction." (Doc. 52 at 3) (alteration in

16

original.)  Plaintiffs' argument refers to the defamation claim as a "state law claim[]" over which supplemental jurisdiction can be exercised.  Plaintiffs' argument actually confirms that the defamation claim is asserted under state law.

Supplemental jurisdiction refers to a federal court's jurisdiction over a state law claim when that claim is related to a separate federal claim in the same case.  Even if a federal court has supplemental jurisdiction over a state law claim, this does not turn that state law claim into a federal claim.  Plaintiffs' suggestion to the contrary is erroneous.

Neither the face of the TAC nor Plaintiffs' argument in opposition suggests that Mr. Morris is asserting a federal "defamation-plus" claim cognizable under § 1983.  However, to the extent the TAC attempts to assert such a claim, it is insufficiently pled and therefore DISMISSED WITH LEAVE TO AMEND.[3]

> b.   State law defamation claim

> i.   Absolute Privilege

California Civil Code § 47(b) provides that any publication made in any "judicial proceeding" or "in any other official proceeding authorized by law" is privileged.  This privilege applies to statements made in "quasi-judicial proceedings," *Wise v. Thrifty Payless, Inc.*, 83 Cal. App. 4th 1296, 1303 (2000), and in

---

[3] **The magistrate judge's review of the pleadings did not address whether Plaintiffs have adequately pled a defamation-plus claim cognizable under § 1983.  Quite understandably, the magistrate judge viewed the defamation claim as a state law defamation claim.  The issue of whether a federal defamation-plus claim is adequately alleged was raised for the first time by Defendants in their motion to dismiss.**

"administrative proceedings," *Ellenberger v. Espinosa*, 30 Cal. App. 4th 943, 952 (1994), and is "absolute," *Lee v. Flick*, 135 Cal. App. 4th 89, 98 (2005).  The California DMV is a public agency which holds administrative and/or quasi-judicial proceedings. *See Wise*, 83 Cal. App. 4th at 1303; *Molenda v. Dep't of Motor Vehicles*, 172 Cal. App. 4th 974, 985 (2009).

Mr. Morris's defamation claim is based on statements Officer Long made at a "D.M.V. administ[r]ative hearing," while he was "under oath" on three separate occasions.  These statements are absolutely privileged under California Civil Code § 47(b) and cannot form the basis of a state law defamation claim.  To the extent the TAC asserts a state law defamation claim, it is DISMISSED WITH PREJUDICE.

ii.  <u>Government Claims Act Compliance</u>

Defendants argue that Mr. Morris's defamation claim is subject to dismissal because he has not alleged compliance with the Government Claims Act. *See* Cal. Gov't Code § 900 et seq.  When a claim is subject to the Government Claims Act, the timely presentation of a claim under the Government Claims Act is not merely a procedural requirement, it is an actual "element of the plaintiff's cause of action." *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 209 (2007).  As such, in the complaint, the plaintiff "must allege facts demonstrating or excusing compliance with the claim presentation requirement.  Otherwise, his complaint ... fail[s] to state facts sufficient to constitute a cause of action." *State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1243 (2004); *see also Shirk*, 42 Cal.4th at 209.  Given that Mr. Morris's state law defamation claim is barred because it is based on statements that

are absolutely privileged under California Civil Code § 47(b), it need not be determined whether his defamation claim is also subject to dismissal for failing to allege facts demonstrating or excusing compliance with the Government Claims Act.

B.   **Motion For A More Definite Statement**

    1.   **Excessive Force Claims**

        a   **Mrs. Morris's Excessive Force Claim**

            i. **Date Of Incident**

Defendants move for a more definite statement of Mrs. Morris's excessive force claim on the ground that the date of her encounter with Officer DeMoss is unclear, which makes it difficult for Defendants to evaluate a statute of limitations defense. Defendants' suggestion that Mrs. Morris is required to plead the date of the incident with Officer DeMoss so that Defendants can evaluate a statute of limitations defense is unpersuasive.

The statute of limitations provides an affirmative defense, and a plaintiff is not required to plead on the subject of an affirmative defense or allege facts which assist the defendant in making an affirmative defense. *See United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993); *Spindex Physical Therapy USA, Inc. v. United Healthcare of Az.*, __ F. Supp. 2d. __, 2009 WL 1154128, at * 8 (D. Ariz. Apr. 29, 2009); *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1169 (E.D. Cal. 2005). If a plaintiff "pleads facts that show that his suit is time-barred or otherwise without merit, he has pleaded himself out of court. But it does not follow from the fact that a plaintiff can get into trouble by pleading more than he is required to plead that he is required to plead that more." *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir.

1   1993) (citations omitted).

2        Mrs. Morris is not required to plead the date of her incident

3   with Officer DeMoss to assist Defendants' with their statute of

4   limitations evaluation.   Nor does Rule 8 impose an obligation on

5   Mrs. Morris to plead the specific date of the incident. *See Armer*

6   *v. OpenMarket, Inc*., No. C08-1731RSL, 2009 WL 2475136, at *1 (W.D.

7   Wash. July 27, 2009); *DeTemple v. Leica GeoSystems, Inc*., No. 08-

8   CV-281, 2009 WL 3617616, at *4 (E.D. Wis. Oct. 29, 2009).   The date

9   is ascertainable in discovery.   Nevertheless, the date Mrs. Morris

10  has alleged — "10/28/2009" - creates a problem.

11       According to the face of the TAC, Officer DeMoss used

12  excessive force on Mrs. Morris on "10/28/09."   This is impossible.

13  Mrs. Morris filed the TAC July 28, 2009, before October 28, 2009.

14  Mrs. Morris cannot assert a cognizable claim based on an incident

15  that could not have occurred before she filed her complaint, nor

16  can Defendants frame an intelligible response to a factually

17  impossible claim.   Plaintiffs assert in their briefing that the

18  date alleged, "10/28/09," was a typographical error.   The date is

19  supposed to be October 28, 2007.   Plaintiffs have offered to "clear

20  up this typo."

21       Defendants' motion for a more definite statement is GRANTED

22  WITH LEAVE TO AMEND to correct the typographical error.

23            b.   <u>Mr. Morris's Excessive Force Claim</u>

24                 i.   <u>Date of incident</u>

25       Defendants fault Mr. Morris for not pleading the date on which

26  Officer Long allegedly used excessive force against him.   Mr.

27  Morris is not required to plead the date of his incident with

28  Officer Long to assist Defendants' with their statute of

limitations evaluation.   Nor does Rule 8 impose an obligation on Mr. Morris to plead the specific date of the incident.

Defendants' motion for a more definite statement on the ground that Mr. Morris failed to plead the date on which Officer Long allegedly used excessive force is DENIED.

### ii.   "Impermissibly vague" claim

Defendants also contend that Mr. Morris's excessive force claim is impermissibly vague.  Defendants argue that they cannot determine, from the face of the TAC, whether Mr. Morris is asserting (i) only an excessive force claim based on the force used during the blood draw, which lead to injuries including a shoulder dislocation and torn ligament, or (ii) whether Mr. Morris is also separately challenging the constitutionality of requiring or forcing him to submit to a blood test in the first instance. Defendants are correct to note the distinction between such claims.

Even if it is proper, under the Fourth Amendment, for the police to conduct a search or seizure of an individual, the search or seizure can nonetheless violate the Fourth Amendment if the police use "*excessive* force in conducting [the] search or seizure." *United States v. Alverez-Tejeda*, 491 F.3d 1013, 1017 (9th Cir. 2007); *see also Schmerber v. California*, 384 U.S. 757, 768 (1966) ("[T]he Fourth Amendment's proper function is to constrain . . . intrusions which are not justified in the circumstances, *or which are made in an improper manner*.").  Accordingly, even if it is proper for the police to conduct a blood test (a type of search), excessive force used to carry out that blood test can violate the Fourth Amendment. *See Ellis v. City of San Diego, Cal.*, 176 F.3d 1183, 1191-92 (9th Cir. 1999) ("[W]arrantless compulsory blood

tests are unreasonable unless supported by both probable cause and exigent circumstances" and "even if the search meets these criteria, it is still unreasonable if the degree of force employed to carry it out is excessive").

In certain situations, however, it may not be proper for the police to conduct a blood test at all.  More specifically, it may be unlawful, under the Fourth Amendment, for the police to compel an individual to take a blood test regardless of the amount of force used to carry it out. *Nelson v. City of Irvine*, 143 F.3d 1196 (9th Cir. 1998).  In pertinent part, the *Nelson* court stated:

> When an arrestee has agreed to submit to a breath or urine test which is available and of similar evidentiary value, the government's need for a blood test disappears. Under such circumstances, it is unreasonable to require a blood test and the Fourth Amendment is violated.

*Id.* at 1207.  Quoting this language from *Nelson*, Defendants argue that they cannot tell, from the face of the TAC, whether Mr. Morris is making a claim, under *Nelson,* that the blood test was an unreasonable search in violation of the Fourth Amendment because Mr. Morris agreed to a breath or urine test and yet Officer Long required him to submit to a blood test.  Defendants are correct; the TAC is unclear as to whether Mr. Morris is asserting such a claim.

The TAC suggests that the Fresno Police Department had a policy, custom or practice pursuant to which officers give individuals "No choice but to have their personal blood drawn," and this policy, custom or practice "deprived ones right to hav[e] a field-sobriety test" or a "Breath" test.  It appears Plaintiff is alleging that Fresno Police Department had a policy, custom or practice of forcing individuals, suspected of being intoxicated, to

submit to blood testing and that Mr. Morris's blood test was carried out in conformity with this policy, custom or practice.  On the other hand, the TAC does not indicate whether Mr. Morris agreed to a breath or urine test, or whether Officer Long offered such tests and Mr. Morris declined.  While Mr. Morris appears to assert that the blood draw was "forced," he also alleges that he "never refused."

It is reasonably clear from the face of the TAC that Mr. Morris is asserting a Fourth Amendment excessive force claim based on the force used during his blood test.  Mr. Morris can assert such a claim even if he is not challenging the propriety of requiring or forcing him to submit to a blood test in the first instance.  It is not clear, however, whether Mr. Morris is also alleging a separate claim that, under *Nelson*, it was unreasonable to require a blood test from him because he agreed to submit to a breath or urine test which was available and of similar evidentiary value.

Defendants' motion for a more definite statement on the ground that Mr. Morris' excessive force claim is impermissibly vague is GRANTED.  If Mr. Morris wishes to pursue a Fourth Amendment claim on the basis that it was unreasonable to require him to submit to a blood test because he agreed to submit to a breath or urine test which was available and of similar evidentiary value, he needs to allege such a claim.

2.  <u>Municipal Liability Claim</u>

Defendants move for a more definite statement of the *Monell* claim arguing that its "basis" is unclear.

For *Monell* purposes, a municipality's official policy "can be one of action or inaction." *Long,* 442 F.3d at 1185.   The mere existence of an express municipal policy or a longstanding custom or practice is not enough to establish liability.   To prevail, the plaintiff must establish the municipality's official policy was "the *moving force* behind the constitutional violation . . . suffered." *Galen v. County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007) (internal quotation marks omitted) (emphasis added).

With respect to the *Monell* claim, the TAC alleges:

> [T]he actions taken against plaintiff Mr. Morris by the officer C.Long was ignored by the department, due to F.P.D.'s 'deliberate policy, custom, and practice ... and that in itself was a 'moving force' behind the constitutional violation[,] which the Plaintiff Mr. Morris suffered.

> Plaintiff asserts that officer Christopher Long at the Fresno D.M.V. hearing on 06/12/08, clearly stated 'Mr. Morris never refused.' When asked by counsel, 'Did you read him (plaintiff) the 'Admonition and record his answers?' Officer Long replied, 'No, WE don't do refusals.' Then counsel asked, 'It wasn't necessary in this case either, right.' Off. C. Long answered 'No, I was able to get the blood.'

> Counsel asked officer Chris Long, . . . 'you don't mark the refusal box?' (Long) 'No WE do Forced blood draw.' Stating, 'No, WE give arguments.'

> Officer Long while under Oath has clearly expressed that the departments policy, custom, and practice is one imposed by their local government as a unit.  Furthermore the departments [sic] choice to force without reading of the admonitions, and to deny ones rights to 'Due Process of the law,' is one that through omissions (Off's) [sic] would likely result in a constitutional violation. Plaintiff contends that the department['s] deliberate indifference is shown from the plaintiffs formal complaint to the F.P.D. Internal Affairs Unit (copies of complaint avil. [sic]). I.A. complaint filed on 10/29/07 and second time on 08/06/08.  Officer Longs [sic] was tolerated for his actions and steps he took to get blood., as stated in F.P.D. I.A. letter received on

24

04/30/08.   RE: IA# 2007-0158, signed Sharon J. Shafer.
Deputy Chief of Police, Investigative Service Division.


The letter states 'Failure to Document Force' was
'Sustained' meaning the allegation occurred.   Also
stating 'Excessive Force' was 'Exonerated,' meaning the
conduct in question occurred, but the actions of the
member(s) were within departments [sic] policy.


Plaintiff asserts that the departments [sic] I.A. letters
are deliberately written in a standard format, which is
directly mis-leading and deceptive, without morals or
sensitivity for the complainee.   This policy is expressed
in I.A. letters as the last paragraphs.   Plaintiff Mr.
Morris clearly and directly informed both Mr. Dyer (Chief
F.P.D.), and Mrs. Swearington about the issue at the City
Hall Form on the issue of a I.P.A.   Plaintiff was able to
be the second speaker, and addressed the issue and his
concerns personally.   Also plaintiff address that his
attempts for a response from either one of them had been
unsuccessful.      Plaintiff    handed    the    Mayor    the
notarized/cert. letters and was told by the Mayor at the
time Mr. Dyer would receive his from her.   This the court
can see as a 'Meeting of the minds.'   The Fresno Police
Departments [sic] policy towards a 'blood draw,' opposed
to 'Forced blood draw' and in the light of ones rights of
a D.U.I. stop.   A policy implemented by the department
that's so deficient that the practice of not reading the
admonitions, turning a blind eye to the right one has to
be protected from physical abuse when the person(s) are
compliant   and   doesn't   resist.   in   its   self   [sic]   a
repudiation of ones (Plaintiff) Constitutional right.


Officer Christopher Longs own omissions clearly stated,
qoute [sic], 'WE.'   With reference   to   the   Police
Department as a whole.   Along with the Internal Affairs
responses.      Shows   how   the   department   supports   the
execution ones Constitutional rights which protects us,
and the liberties which we are protected by.

Officer Christopher Longs omission stating that his
understanding of their practice to be one that officers
can take advantage of their right to collective evidence,
such in this case.   To make arguments, create a form of
reason, to make the person have NO choice but to have
their personal blood drawn.   Depriving ones right to
having a field sobriety [sic] test, or then the E-Pass
test (Breath).   Instead directly to a 'FORCED' blood
draw, to assert that force at free will. As the Internal
Affairs letter said, 'it was within department policy,'

25

1      tolerating, ignoring, and condoning.  Confirmed by
2      D.M.V.'s report – 'Admonitions', Pg. 2 of 3 (Form
     #13353cvc).

3      Officers omissions, documentation, and the Plaintiffs
     personal knowledge supports the allegation listed above.
4      The Fresno Police Departments [sic] practice of sharing
     an understanding that are arbitrary and unreasonable,
5      with no substantial realation [sic] to the general
     welfare of the public.  Which now the Plaintiff Mr.
6      Morris has suffered injuries as the result of the 'Forced
     Blood-draw.' The Plaintiff feels that the Fresno Police
7      Department was not within the scope of the law, for the
     reasons listed Plaintiff seeks this claim.

8

9 (Doc. 37 at 4-7 (emphasis omitted).)  Although this is borderline

10 unintelligible, the TAC tells Defendants that Mr. Morris alleges

11 that the forced blood draw was a department policy.  The TAC,

12 however, is unclear and confusing in certain respects.

13      The alleged *Monell* claim is based on a Fresno Police

14 Department policy, custom or practice regarding forced blood draws.

15 Pursuant to this policy, custom or practice, officers give

16 individuals "No choice but to have their personal blood drawn," and

17 this policy, custom or practice "deprived ones right to hav[e] a

18 field-sobriety test" or a "Breath" test.  Plaintiff alleges that

19 the Fresno Police Department had a policy, custom or practice of

20 forcing individuals who are suspected of being intoxicated to

21 submit to compelled blood testing without prior admonitions and

22 that Mr. Morris's blood test was carried out in conformity with

23 this policy, custom or practice.

24      What is unclear in the TAC, however, is what underlying

25 constitutional violation was caused by this policy, practice or

26 custom.  Mr. Morris's does *not* allege in the TAC that this policy,

27 custom or practice regarding blood draws was the moving force

28

behind Officer Long's use of excessive force.   Without any indication in the TAC as to what constitutional violation Mr. Morris allegedly suffered as a result of the policy, custom or practice regarding blood draws, the TAC does not provide Defendants with adequate notice of the basis for the *Monell* claim.

Apart from this policy, custom or practice regarding blood draws, it is unclear whether Mr. Morris claims that the Fresno Police Department had a policy, custom or practice regarding "directly-misleading and deceptive" internal affairs letters drafted "without morals or sensitivity for the complainee."  Even if it did, there is no identified constitutional violation Mr. Morris allegedly suffered as a result of a such a policy, custom or practice.

Defendants' motion for a more definite statement as to the *Monell* claim is GRANTED WITH LEAVE TO AMEND.

To provide Defendants' with sufficient notice as to the basis for the *Monell* claim, the TAC must be amended to address what constitutional violation allegedly occurred as a result of the Fresno Police Department's policy, custom or practice regarding blood draws.

C.   <u>Ancillary Matters</u>

Previously, the magistrate judge recommended dismissal with prejudice of Plaintiffs' Fourteenth Amendment claim pled in Plaintiffs' second amended complaint.   This recommendation was adopted, and the Fourteenth Amendment claim was dismissed with prejudice.

Defendants note that in Plaintiffs' subsequently-filed TAC, in

27

the *Monell* claim, the TAC alludes to the fact that the Fresno Police Department's policy, custom and/or practice involves denying "ones rights to 'Due Process of the law.'" (Doc. 37 at 4.) Defendants suggest that Plaintiffs might be "attempting to rehabilitate their Fourteenth Amendment claim by using the language 'deny one's rights to Due Process of the law,'" and Defendants correctly argue that Plaintiffs "cannot make a furtive attempt to pursue" this claim in light of its previous dismissal with prejudice.

Plaintiffs' previously pled Fourteenth Amendment claim was dismissed with prejudice.  Plaintiffs are admonished that they cannot reassert this claim, and their pleadings will not be so construed.

## V.   CONCLUSION

For the reasons stated, Defendants' motion is GRANTED in part and DENIED in part.

1.   With respect to the excessive force claim alleged by Mrs. Morris:

a.   Defendants' motion to dismiss is GRANTED on the ground that the TAC does not sufficiently allege that Officer DeMoss was acting under color of state law.  This claim is dismissed WITH LEAVE TO AMEND.

b.   In light of the admitted typographical error in the TAC with respect to the date of the alleged excessive force "10/28/09," Defendants' motion for a more definite statement is GRANTED WITH LEAVE TO AMEND.  Plaintiffs are given leave to amend to correct the typographical error.

1      **2.    With respect to the excessive force claim alleged by Mr.**
2  **Morris:**

3           **a.    Defendants' motion to dismiss is DENIED on the**
4  **ground that the TAC does not sufficiently allege that Officer Long**
5  **was acting under color of state law.**

6           **b.    Defendants' motion for a more definite statement of**
7  **this claim is DENIED in part and GRANTED in part.**

8                **i.    Defendants' motion for a more definite**
9  **statement on the ground that the TAC failed to plead the date on**
10 **which Officer Long allegedly used excessive force is DENIED.**

11               **ii.    Defendants' motion for a more definite**
12 **statement on the ground that Mr. Morris's excessive force claim is**
13 **impermissibly vague is GRANTED.    If Mr. Morris wishes to pursue a**
14 **Fourth Amendment claim under *Nelson* on the basis that it was**
15 **unreasonable to require him to submit to a blood test because he**
16 **agreed to submit to a breath or urine test which was available and**
17 **of similar evidentiary value, he needs to allege such a claim.**

18     **3.    With respect to the *Monell* claim (i.e., the municipal**
19 **liability claim):**

20          **a.    Defendants' motion to dismiss is GRANTED on the**
21 **ground that the Fresno Police Department is not the proper party to**
22 **Plaintiffs' § 1983 claim.    The Fresno Police Department is**
23 **DISMISSED.    Plaintiffs are given leave to amend to name the City of**
24 **Fresno as a defendant.**

25          **b.    Defendants' motion for a more definite statement is**
26 **GRANTED on the ground that the basis for the *Monell* claim is**
27 **unclear.    Leave to amend is given to allege what constitutional**

28

violation allegedly occurred as a result of the Fresno Police Department's policy, custom or practice regarding blood draws.  In addition, if Mr. Morris wishes to assert a *Monell* claim based on some *other* policy, custom or practice, he must allege what this other policy, custom or practice consists of, and what constitutional violation allegedly occurred as a result of this policy, custom or practice.

4.   With respect to the defamation claim:

a.   Defendants' motion to dismiss is GRANTED on the ground that, to the extent the TAC attempts to assert a "defamation-plus" claim cognizable under § 1983, it is insufficiently pled.  Any such claim is DISMISSED WITH LEAVE TO AMEND.

b.   Defendants' motion to dismiss is GRANTED on the ground that, to the extent the TAC asserts a state law defamation claim, it is barred by the absolute privilege in California Civil Code § 47(b).  To the extent the TAC asserts a state law defamation claim, it is DISMISSED WITHOUT LEAVE TO AMEND.

c.   Defendants' motion to dismiss on the ground that, to the extent the TAC asserts a state law defamation claim, the TAC fails to plead compliance with the Government Claims Act is DENIED as moot.

Any amended complaint is due within thirty (30) days of the electronic filing of this Memorandum Decision.  Defendants' responsive pleading is due within twenty (20) days of notice of the electronic filing of any such amended complaint.  Plaintiffs' "Amended Complaint" (Doc. 60), filed after the hearing on this

**motion but before the issuance of this Memorandum Decision, is ordered stricken.**

**Defendants shall submit a form of order consistent with this Memorandum Decision within five (5) days following electronic service of this decision.**

IT IS SO ORDERED.

**Dated:    January 14, 2010**                          **/s/ Oliver W. Wanger**
                                                    UNITED STATES DISTRICT JUDGE