1
2
3
4
5
6
7
8
9

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| ROBERT MORRIS, | ) | 1:08-cv-01422-AWI-MJS |
| | ) | |
| Plaintiff, | ) | ORDER RE: FURTHER |
| | ) | MOTIONS IN LIMINE |
| v. | ) | |
| | ) | (Docs. 218 and 220) |
| OFFICER CHRISTOPHER LONG, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I. INTRODUCTION

Plaintiff Robert Morris (hereinafter referred to as "Plaintiff") and defendant Officer Christopher Long (hereinafter referred to as "Defendant") have filed competing motions in limine. For reasons discussed below, the motions shall be granted in part and denied in part.

## II. FACTS AND PROCEDURAL BACKGROUND

The Court refers the parties to previous orders for a complete chronology of the proceedings. On January 11, 2012, Plaintiff filed his ninth amended complaint, asserting one cause of action against Defendant for federal civil rights violations (in particular, excessive force in violation of the Fourth Amendment right to be free of unreasonable searches and seizures) pursuant to 42 U.S.C. § 1983.

In the ninth amended complaint, Plaintiff alleged as follows:

> "4. . . . [P]laintiff was taken by Officer Long to a Fresno Police Department facility located near Shaw Avenue and 6th Street for purposes of a forced blood draw. During the course of said blood draw, Officer Long unnecessarily and with extreme force administered a control hold on plaintiff's left arm while blood was being drawn from his right arm.  Officer Long continued this extreme use of force for a prolonged time, resulting in severe and permanent injuries to plaintiff's left arm and shoulder. [¶] 5. Officer Long's use of force in connection with the forced blood draw was totally unnecessary, as plaintiff was cooperative throughout his interaction with Officer Long, even though he had been the victim of a battery and robbery . . . ."

On April 13, 2012, the parties filed initial motions in limine.  The parties filed further motions in limine on July 8, 2012 and oppositions and replies on July 23, 2012 and July 30, 2012, respectively.

## III.  LEGAL STANDARD

Motions in limine may be "made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. U.S.,* 469 U.S. 38, 40 n. 2, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).  "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Id*. at 41 n. 4.  Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  "Evidence is relevant if [¶] (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and [¶] (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

## IV.  DISCUSSION

2

***A. Plaintiff's motions in limine[1]***

***1. Motion in limine #1: Untimely disclosed or undisclosed witnesses and evidence*** – In his initial motions in limine filed April 13, 2012, Plaintiff, pursuant to Federal Rules of Civil Procedure 26(a) and (e), first moved to exclude "any evidence or witnesses not timely disclosed during discovery." In particular, Plaintiff contended the defense had listed documents (nos. 20-22, 23 (in part), 24 and 27-29) and witnesses (nos. 14 and 17-58) in the pretrial order issued April 3, 2012 that had not been disclosed to Plaintiff or disclosed during discovery with reasonable particularity, either in Defendant's initial disclosures or responses to written discovery requests.  Finding Plaintiff had failed to provide evidence (in the form of his own declaration or a declaration from counsel) to show this was the case, the Court reserved ruling on the motion in its April 27, 2012 order.  Plaintiff now renews this motion, pointing to a declaration filed April 29, 2012 by Plaintiff's counsel Kevin Little that Plaintiff contends establishes Defendant did not comply with his discovery obligations.

In opposition, Defendant contends Rule 26 does not require the disclosure of witnesses or evidence where they would be used solely for impeachment purposes.  Rule 26 provides in pertinent part, "[A] party must, without awaiting a discovery request, provide to the other parties: [¶] (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment; [¶] (ii) a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]" Fed. R. Civ. P. 26(A).  To the extent Defendant intends for his argument here to be construed as a representation he intends to use the witnesses and evidence at issue solely for impeachment purposes, the Court

---

[1] Plaintiff renews his initial fourteen motions in limine filed April 13, 2012.  Plaintiff also raises two new motions in limine (#15 and #16), but subsequently withdraws them in his reply to Defendant's opposition.  Accordingly, those motions shall not be considered by the Court.

would agree Defendant's failure to disclose them would not preclude their admissibility/ability to testify.  To the extent Defendant does *not* so intend, the Court, having reviewed the pleadings of record and all competent and admissible evidence submitted, would find as follows:

- defense witness nos. 19 and 20 may be permitted to testify;
- defense witness nos. 18 and 21-56 are precluded from testifying;
- defense exhibit nos. 20-23, 27 and 29 are admissible;
- defense exhibit nos. 24 and 28 are inadmissible.

The Court shall leave it to Defendant to clarify at the hearing how he intends to proceed, and shall rule accordingly.  Thus, ruling on Plaintiff's motion in limine #1  remains RESERVED.


*2. Motion in limine #2: Character evidence* – Contending such evidence constitutes impermissible character evidence, Plaintiff, in his initial motions in limine filed April 13, 2012, further moved to preclude Defendant from introducing "(1) any evidence suggesting that [Plaintiff] has ever used alcohol excessively; (2) evidence of [Plaintiff's] prior arrests unrelated to the subject incident; (3) evidence of confrontations with police officers unrelated to the subject incident; (4) evidence of [Plaintiff's] mental health hospitalization and history unrelated to the incident and his damages resulting therefrom; and (5) evidence of [Plaintiff's] medical history unrelated to the incident and his damages resulting therefrom."  In its April 27, 2012 order, the Court denied this motion in its entirety, finding such evidence was relevant and admissible on the issues of economic and emotional distress damages.  Plaintiff now renews the motion, but provides no argument or evidence why the Court should reconsider its previous denial.  Accordingly, motion in limine #2 remains DENIED.


*3. Motion in limine #3: Internal Affairs investigation* – In his initial motions in limine filed April 13, 2012, Plaintiff further moved to exclude "the result of the Fresno Police Department's internal affairs investigation into the underlying accident as evidence of the 'correctness' of [Defendant's] actions," contending the results of such investigations are irrelevant and "typically not admissible in civil rights actions."  Defendant did not oppose this motion in his opposition filed April 23, 2012.  Therefore, the Court granted the motion in its April 27, 2012 order.  Plaintiff does not request any

further relief as to this motion.  Accordingly, motion in limine #3 remains GRANTED.

***4. Motion in limine #4: Extrinsic information*** – In his initial motions in limine filed April 13, 2012, Plaintiff further moved to preclude Defendant "from justifying the force used against [Plaintiff] on the basis of any information other than that known to [Defendant] at the time of the incident," contending an officer's use of force "must be justified based on the information then known to him, not later-acquired information."  The Court noted as follows in its April 27, 2012 order:

> " '[A]n officer's use of excessive force to effect an arrest is a violation of a person's Fourth Amendment right to be free from *unreasonable* searches and seizures.' *Bryan v. MacPherson,* 630 F.3d 805, 817 (9th Cir. 2010) (emphasis added).  Plaintiff correctly observes that '[a]s in other Fourth Amendment contexts . . . , the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances *confronting them,* without regard to their underlying intent or motivation.' *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (emphasis added).  That is to say, reasonableness 'must be judged from the perspective of [an] officer on the scene, rather than with the 20/20 vision of hindsight.' *Id.* at 396. Accordingly, in determining whether an officer's actions were reasonable, the trial court 'cannot consider evidence of which the officer[ ] [was] unaware.' *Glenn v. Washington County,* 673 F.3d 864, 872-74, 873 n. 8 (9th Cir. 2011) (statements mother of victim fatally shot by responding officers made to 911 operator that victim ' "threatened to kill everybody" ' and 'might "run at the cops with a knife" ' could not serve as a basis for summary judgment where district court correctly assumed the officers did not know of such statements, even though the statements might have ' "demonstrat[ed] that the officers' safety concerns were not at odds with information provided to law enforcement')."

Plaintiff did not, however, identify any evidence to exclude pursuant to the foregoing authority. Instead, Plaintiff simply sought to prevent Defendant from introducing evidence to prove or controvert certain portions of the reasonableness inquiry, which the Court concluded was not a proper motion in limine but rather a request for an evidentiary sanction.  Therefore, the Court denied the motion.  Plaintiff now renews the motion "to specify that all of the character evidence outlined . . . in motion in limine [#] 2 should be excluded pursuant to this motion, since it is uncontroverted that the defendant had no prior knowledge of the defendant [sic; Plaintiff?] or his history at the time force was used."  Problematically for Plaintiff, the Court has already ruled that the evidence specified in Plaintiff's motion in limine #2 is relevant and admissible for the (non-character based) purpose

of contesting Plaintiff's claimed economic and emotional distress damages.  To the extent Plaintiff intends to suggest the evidence should not be used by Defendant to impeach Plaintiff's character, Plaintiff would at most be entitled to request an instruction limiting the use of the evidence; Plaintiff would not be entitled to a blanket exclusion.  Accordingly, motion in limine #4 remains DENIED.

*5. Motion in limine #5: Lay/expert opinions on legal issues* – In his initial motions in limine filed April 13, 2012, Plaintiff further moved to preclude Defendant from "presenting lay or expert opinions on legal issues, since such testimony would be clearly improper."  In his opposition filed April 23, 2012 , Defendant represented to the Court his experts would not testify at trial "as to what the law is or requires," and further stated he would not oppose the "preclusion of the presentation of opinions that constitute legal conclusions, so long as it applies equally to both sides' witnesses." Therefore, the Court granted the motion.  Plaintiff does not request any additional relief regarding this motion.  Accordingly, motion in limine #5 remains GRANTED.

*6. Motion in limine #6: Lay/expert testimony evaluating credibility* – In his April 13, 2012 initial motions in limine, Plaintiff further moved to exclude "any lay or expert testimony that purports to opine as to the credibility of any witness or party, since such testimony would be clearly improper." In his April 23, 2012 opposition, Defendant did not oppose the exclusion of lay or expert testimony opining on a witness's credibility, so long as such an exclusion applied equally to both parties' witnesses.  Therefore, the Court granted the motion.  Plaintiff does not request any additional relief regarding this motion.  Accordingly, motion in limine #6 remains GRANTED.

*7. Motion in limine #7: Items withheld on ground of privilege* – In his April 13, 2012 initial motions in limine, Plaintiff further moved to exclude "mention of any item that was withheld by the defense on the basis of privilege," contending "issues to which a party claims a discovery privilege cannot be waived as a matter of convenience at trial[.]" The Court ruled in its April 27, 2012 order

that any evidence not disclosed in discovery due to the invocation of a privilege could not be introduced at trial. However, because Plaintiff had failed to identify any such evidence for the Court's consideration as part of his motion, the Court reserved jurisdiction over the application of its ruling until such time Defendant seeks to introduce specific evidence Plaintiff contends was not produced on ground of privilege. Plaintiff now renews this motion to clarify that Defendant "has included numerous training personnel in [his] witness list . . . , specifically, witnesses 4, 8, 9, 15-25, 29, 34, 36, 45-47 and 50," who Plaintiff contends "should not be able to testify as to any departmental policy or training issues, since these matters were not produced during discovery."

In opposition, Defendant represents to the Court these witnesses are not training personnel but percipient witnesses to Defendant's interactions with Plaintiff and/or the investigation of Plaintiff's allegations against Defendant, and that they will testify as fact witnesses "regarding the policies and procedures in effect at the time of the subject incident and the training that is provided to City of Fresno police officers." The Court agrees these witnesses may testify as fact witnesses based on their personal knowledge of the Fresno Police Department's policies, procedures and training methods, so long as Defendant does not attempt to elicit expert- or lay opinion-type testimony from them on the foregoing issues under Federal Rules of Evidence 701 and 702. Based on Defendant's representations, ruling on motion in limine #7 shall remain RESERVED.[2]

***8. Motion in limine #8: Evidence of bias*** – In his April 13, 2012 initial motions in limine, Plaintiff further moved to exclude "any collateral evidence that might be introduced to demonstrate bias, such as his prior interactions with members of the Fresno Police Department and his prior complaints based thereupon," contending such evidence was irrelevant and unduly prejudicial and therefore

---

[2] Under this motion, Plaintiff further moves to preclude Defendant from "presenting any evidence pertaining to his work performance, his standing in the department, or his internal affairs history," but provides no compelling argument or evidence to support his position. Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court finds such preclusion is not warranted.

inadmissible under Federal Rules of Evidence 401 and 403.  Citing *Barnard v. U.S.,* 342 F.2d 309, 316 (9th Cir. 1965), the Court concluded in its April 27, 2012 order: "Problematically for Plaintiff, '[e]vidence tending to show a substantial reason for bias or interest in an important witness is never collateral or irrelevant.'  To the extent Plaintiff intends to suggest any extrinsic evidence that would be admissible to show bias should nonetheless be excluded as unduly prejudicial, Plaintiff has failed to identify what that evidence might be.  The Court has already addressed the evidence of Plaintiff's prior interactions with members of the Fresno Police Department in its analysis of Plaintiff's motion in limine #2 . . . and found such evidence to be admissible for the purposes of controverting Plaintiff's claim for emotional distress damages."  Accordingly, the Court denied the motion. Plaintiff now appears to renew this motion, but provides no argument or evidence why the Court should reconsider its previous denial.  Therefore, motion in limine #8 remains DENIED.

**9. Motion in limine #9: Law enforcement testimony** – In his April 13, 2012 initial motions in limine, Plaintiff further moved to exclude "any law enforcement expert testimony, since no expert reports were produced during discovery, as required by Federal Rule of Civil Procedure 26(a)(2)(B)." In opposition, Defendant represented to the Court that he did not intend "to call any City of Fresno police officer to give 'non-retained' expert testimony," and further represented that witnesses from the Fresno Police Department would "testify as fact witnesses regarding the subject incident itself, the policies and procedures in effect at the time of the subject incident, as well as, the training that is provided to City of Fresno police officers."  Based on these representations, the Court denied the motion without prejudice.  Plaintiff now renews this motion "to object to law enforcement witnesses giving testimony based on policy and training documents withheld during discovery," but provides no compelling reason why the Court should reconsider its previous denial.  Consistent with the analysis of motion in limine #7, motion in limine #9 remains DENIED without prejudice.

**10. Motion in limine #10: Prior record and incarcerations** – In his April 13, 2012 initial motions

in limine, Plaintiff further moved to exclude any evidence of his prior record or incarcerations, contending that because none of this information was known to Defendant at the time of the alleged misconduct, the evidence is irrelevant and/or any relevance is substantially outweighed by the danger of prejudice to Plaintiff.  The Court ruled in its April 27, 2012 order: "Plaintiff has provided no authority – and the Court's research reveals no authority – to support the proposition that Plaintiff's prior record should be excluded simply because Defendant was unaware of it at the time of the alleged incident.  Plaintiff's argument, in essence, is that such evidence cannot be used to establish any aspect of the reasonableness inquiry . . . . [T]his is not a proper motion in limine, but rather a request for evidentiary sanctions."  Accordingly, the Court denied the motion.  Plaintiff now renews the motion, but provides no compelling reason why the Court should reconsider its previous denial.

Plaintiff now contends the request cannot constitute an evidentiary sanction because Defendant has conceded, in written discovery responses and at a deposition, that he had no knowledge of Plaintiff's record prior to the subject incident.  From this, Plaintiff – citing *Glenn v. Washington County,* 673 F.3d 864, 872-74, 873 n.3 (9th Cir. 2011), a case the Court first brought to the parties' attention in its April 27, 2012 order – contends evidence of which Defendant was unaware cannot be considered in determining whether Defendant's actions were reasonable.  The Court does not necessarily disagree with this proposition.  Problematically for Plaintiff, evidence of his prior record is subsumed within two categories of evidence addressed in his motion in limine #2 above – (i) prior arrests unrelated to the subject incident and (ii) confrontations with police officers unrelated to the subject incident – the Court already concluded was relevant and admissible on the issues of economic and emotional distress damages.  Thus, Plaintiff is not entitled to exclude such evidence. At most, Plaintiff would be entitled to request an instruction limiting the use of such evidence to calculation of damages.  Accordingly, Plaintiff's motion in limine #10 remains DENIED.

***11. Motion in limine #11: Evidence of prior drug or alcohol use*** – In his April 13, 2012 initial motions in limine, Plaintiff further moved to exclude evidence of "[a]ny prior drug or alcohol use

by [P]laintiff, which was unknown to [Defendant]," contending such evidence was irrelevant and/or "any relevance would be substantially outweighed by the probability that the jury would be prejudiced." In its April 27, 2012 order, the Court, citing *Butler v. French,* 83 F.3d 942, 945 (8th Cir. 1996), concluded Plaintiff's drug and alcohol use would have affected his work life expectancy and earning capacity, which in turn affected the calculation of damages, meaning evidence of Plaintiff's drug and alcohol use was material to and probative on the issue of damages for future lost income. Acknowledging the evidence "could pose a significant risk of unfair prejudice by casting Plaintiff in a negative light," the Court nonetheless held that because the evidence was relevant and the ninth amended complaint requested compensatory damages for all past, present and future economic damages (that is, such damages were central to Plaintiff's claim), the prejudicial effect of the evidence did not substantially outweigh their probative value. Accordingly, the Court denied the motion. Plaintiff now appears to renew this motion, but provides no argument or evidence why the Court should reconsider its previous denial. Therefore, motion in limine #11 remains DENIED.

***12. Motion in limine #12: Mug shots*** – In his April 13, 2012 initial motions in limine, Plaintiff, pursuant to Rule 401 and 403, further moved to exclude "any mug shots of Plaintiff," contending such evidence was irrelevant and/or any relevance would be substantially outweighed by the probability that the jury would be prejudiced. The Court ruled as follows in its April 27, 2012 order:

> " 'Trial courts generally exclude mug shots from evidence. Mug shots, like evidence of prior convictions, are usually not admissible under Fed. R. Evid. 404(b) (evidence of other crimes, wrongs or acts). Even if relevant, a mug shot tends to make people believe that the person is "bad," and therefore can be unfairly prejudicial. Fed. R. Evid. 403. Moreover, the visual impact of a mug shot, apart from mere references to a prior conviction, can leave a lasting, although illegitimate, impact on the jury. [Citation.] Accordingly, the use of mug shots at trial is highly disfavored.' *U.S. v. George,* 160 Fed.Appx. 450, 456 (6th Cir. 2005) (unpublished). In light of the foregoing principles, and the fact that Defendant has not identified any issues for which the mug shots might have some probative value, the Court sees no reason to potentially allow the mug shots into evidence."

Accordingly, the Court granted the motion. Plaintiff does not request any further relief as to this motion. Defendant moves for reconsideration, but provides no compelling reason why the Court

1   should reconsider its previous ruling.  Accordingly, motion in limine #12 remains GRANTED.

2

3   **13. Motion in limine #13: Dismissed claims/parties** – In his April 13, 2012 initial motions in limine,

4   Plaintiff further moved to exclude "any evidence or other reference to claims or parties that have

5   been dismissed before trial," contending such evidence or references would be clearly irrelevant and

6   prejudicial.  The Court ruled as follows in its April 27, 2012 order: "Plaintiff has provided no

7   argument or evidence to explain how such evidence could conceivably be prejudicial.  Plaintiff has

8   also provided no authority – and the Court's research reveals no authority – to support the

9   proposition that evidence is irrelevant simply because it refers to claims or parties that were

10  dismissed."  Accordingly, the Court denied the motion.  Plaintiff now appears to renew this motion,

11  but provides no compelling reason why the Court should reconsider its previous denial.

12      Plaintiff's motion is clearly designed to avert an "empty chair" defense.  Problematically for

13  Plaintiff, Defendant is entitled to present an empty chair defense, and such strategy might involve

14  references to parties and/or claims that have been dismissed.  *Kunz v. DeFelice,* 538 F.3d 667 (7th

15  Cir. 2008) is instructive on this issue.  After spending the afternoon and evening of March 22, 1999

16  at a bar watching March Madness and drinking beer, Jeremy Kunz borrowed the SUV of an

17  acquaintance, Erik, and left the bar to run an errand delivering drugs.  Kunz failed to pull over after

18  grazing a parked car, prompting a 911 call from a witness.  *Id.* at 670.  Officer Richard DeFelice and

19  his partner responded.  DeFelice discovered, after running the SUV's plates, that the vehicle had

20  been reported stolen.  Kunz finally stopped the SUV after a low-speed car chase and tried to discard

21  packets of drugs while fleeing on foot, and was arrested as he tried to scale a chain-link fence.  As

22  he was being handcuffed, multiple officers kicked Kunz, causing a sharp pain eventually diagnosed

23  as a broken rib.  The officers dragged Kunz back to the squad car and took him to the station, where

24  they placed him a holding room.  There, DeFelice repeatedly punched Kunz in the face, causing him

25  to lose consciousness several times, until Kunz confessed he knew the SUV was stolen.  Another

26  officer who witnessed the exchange typed out the confession.  Kunz was then photographed and

27

28                                          11

taken to lock-up.  Although he complained of injuries, he was not treated at a hospital until the next day, when he was given an over-the-counter painkiller and, later, prescribed Motrin.  *Id*. at 671.

Kunz sued DeFelice, the City of Chicago and other individual defendants for excessive force and failure to provide medical treatment under 42 U.S.C. § 1983.  *Kunz, supra,* 538 F.3d at 671.  The jury returned a verdict in favor of Kunz, finding DeFelice liable for $10,000 in compensatory damages and $250,000 in punitive damages.  *Id*. at 672.  Shortly before trial, Kunz had voluntarily dismissed without prejudice all defendants except the city and DeFelice.  On appeal, DeFelice asserted the trial court committed reversible error by permitting Kunz to dismiss all other defendants, contending their absence at trial prejudiced him by leading the jury to impose the full weight of the punitive damages award on him alone.  *Id*. at 677.  In rejecting this argument, the court implicitly held DeFelice had a right to ascribe fault to other alleged tortfeasors who were no longer parties to the action: "DeFelice does not come close to showing reversible error here.  The assertion that his defense was hampered by creating too many empty chairs at the defense table seems backward: far from preventing him from 'deflecting' liability onto others, as he phrases it, it permitted him to point at those empty chairs and question how much of the harm he was responsible for.  Unlike codefendants, empty chairs do not talk back.  DeFelice questioned Kunz about the dismissals at trial, and so the jury was well aware that DeFelice was not the only officer involved."  *Id.* at 678.  Like DeFelice, Defendant may refer to dismissed parties and/or claims in attributing fault to empty chairs.

Nevertheless, Defendant represents to the Court in his reply that he would not be opposed to "excluding reference to the fact that parties and claims were previously dismissed [ ] on the condition that Plaintiff be equally precluded from presenting evidence and/or testimony relating to any of the dismissed parties having been parties in this action or to any of the dismissed claims."  Based on Defendant's representations, Plaintiff's motion in limine #13 shall be GRANTED.

***14. Motion in limine #14: Miscellany*** – In his April 13, 2012 initial motions in limine, Plaintiff further contended, "Discovery also included many documents pertaining to [P]laintiff's other

12

contacts with law enforcement and his other arrests . . . . [T]his evidence should be excluded. Certainly, the defense should also be precluded, if any questioning is allowed on any impeachment topic, from introducing or making reference to documents to buttress its contentions." Finding Plaintiff had failed to specify what exactly he was seeking to exclude, the Court denied the motion in its April 27, 2012 order. Plaintiff does not elaborate further on this issue in his renewed motions. Accordingly, Plaintiff's motion in limine #14 remains DENIED.

**15. Motion in limine #15 –** WITHDRAWN

**16. Motion in limine #16 –** WITHDRAWN

---

**B. Defendant's motions in limine[3]**

**6. Motion in limine #6: Limit medical evidence** – Defendant first moves to "limit and/or preclude the evidence and testimony from Plaintiff's new treating physician Dr. Sanagaram Shantharam" and to "limit any evidence and/or testimony of whether Plaintiff is in need of shoulder replacement surgery."[4] Defendant contends, "[O]n June 21, 2012, Plaintiff provided Defendant with a 'Follow Up Orthopedic Evaluation' from Dr. Allyn dated June 12, 2012 . . . . This evaluation revealed that Plaintiff would be referred to a physician for hemiarthroplasty or total arthroplasty (replacement) of

---

[3] Defendant does not renew his previous five motions in limine filed April 13, 2012, but asserts nine new motions (#6 through #14). In his reply to Plaintiff's opposition, Defendant withdraws motion in limine #13. Accordingly, that motion shall not be considered by the Court.

[4] Defendant had originally requested the Court "limit evidence and/or testimony of any witnesses which either party can present relating to Plaintiff's medical treatment after the April 30, 2012 Motions in Limine hearing" and to "limit the medical evidence the [p]arties can present on Plaintiff's damages." This request was subsequently narrowed in Defendant's reply.

Plaintiff's left shoulder . . . . Any indication that Plaintiff was seeking a shoulder replacement surgery was only first realized from a review of the 'Follow Up Orthopedic Evaluation' . . . . Every indication up until that time pointed to Plaintiff receiving pain management treatment, not actively seeking a referral surgery." Defendant further contends, "On July 5, 2012, Plaintiff's counsel first identified this new physician by informing Defendant that Plaintiff has an appointment scheduled with a Dr. Sanagaram Shantharam . . . . This is just two weeks before trial is scheduled to begin and the day before trial setting conference and motion in limine hearing on August 7, 2012. To depose Dr. Shantharam before Plaintiff's scheduled appointment would hold no value as the doctor has had no opportunity to examine Plaintiff and develop any opinions. To depose Dr. Shantharam after Plaintiff's scheduled appointment and within the two weeks before trial may be a difficult feat to accomplish between coordinating the attorneys, Dr. Shantharam, and Plaintiff's schedules, all the while preparing for the trial itself." Defendant further contends, "Had trial proceeded on May 8, 2012 as originally scheduled, then both parties would effectively have been precluded from using any of the newly acquired medical evidence by virtue of the fact that it would not have been available at the time of trial. Similarly, it is important to note that the original trial date was vacated so the parties could conduct discovery relating to a collateral character evidence issue, not to address or conduct discovery on new medical treatment for Plaintiff's shoulder."

Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court finds there was proper supplementation of medical discovery by Plaintiff pursuant to Federal Rule of Civil Procedure 26, even if it occurred after the close of global discovery. Accordingly, Defendant's motion in limine #6 shall be DENIED. However, given the Court has already reopened discovery and continued the trial date once at Plaintiff's request, the Court would not be averse to considering a similar request by Defendant pursuant to this ruling.

*7. **Motion in limine #7: Building photographs** –* Defendant further moves to exclude six photographs, purportedly showing the exterior of the building where the alleged blood draw

14

occurred, that were produced by Plaintiff on June 8, 2012.  Defendant contends the photographs should be excluded because they were not produced in discovery or timely produced in supplemental discovery, even though they were the subject of a discovery request.  Rule 26(a) requires a party to provide the opposing party with "the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  Fed.R.Civ.P. 26(a)(1)(A)(I).  Under Rule 26(e), a party is under a continuing obligation to supplement its discovery responses.  *See* Fed.R.Civ.P. 26(e)(1).  If a party fails to identify a witness or make a disclosure that is required under Rule 26(a) or (e), Rule 37(c)(1) provides "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed.R.Civ.P. 37(c)(1).  Plaintiff concedes the photographs were not timely produced.  The Court further notes that the modified pretrial order issued May 14, 2012 states no exhibits, other than those expressly listed in the order, may be admitted unless stipulated to by the parties or upon a showing the order should be modified to prevent manifest injustice.  Plaintiff does not contend inclusion of the photographs is needed to prevent manifest injustice.  Therefore, motion in limine #7 shall be GRANTED.

***8./9./10. Motions in limine #8, #9 and #10: testimony of Matthew Hare, Lori Hare, Edward Hare, Heather Ziegenbein and Bryon Stuckey and evidence of Defendant's interactions with animals*** – Defendant further moves to exclude the testimony of witnesses Matthew Hare, Lori Hare and Edward Hare regarding two incidents between Matthew Hare and Defendant, contending Plaintiff intends to use such testimony to "demonstrat[e] Defendant's subjective state of mind, relating to off-duty conduct during two separate social gatherings involving Defendant's in-laws.  Such evidence or testimony would be inadmissible character evidence, unless offered to prove something other than propensity to engage in similar conduct."  For the same reasons, Defendant also moves to exclude the testimony of Heather Ziegenbein and Bryon Stuckey regarding two unrelated on-duty use-of-

force incidents involving Defendant and Ziegenbein and Defendant and Stuckey that were the subject of internal affairs complaints.  Lastly, Defendant moves to preclude Plaintiff from offering argument or evidence of Defendant's interactions with animals, contending such evidence is irrelevant.  In opposition, Plaintiff contends the testimony will establish "[D]efendant responds to even minimal verbal opposition with physical force."  Plaintiff further contends, "[E]ach of the four incidents involving [Matthew Hare, Ziegenbein and Stuckey] shows . . . [D]efendant acted aggressively and without provocation in response to non-threatening verbal conduct challenging or criticizing him," and is thus "germane to intent, motive, absence of accident, and to explain [P]laintiff's damages, since [P]laintiff was similarly subjected to force after he made a statement in [ ] [D]efendant's presence indicating that he was going to pursue his legal remedies."  Having reviewed the pleadings and all competent and admissible evidence submitted, the Court agrees with Defendant.

Plaintiff provides no compelling argument or evidence to show how the testimony at issue could conceivably establish "intent, motive, absence of accident and [ ] explain [his] damages," as he claims, and the assertion that he intends to use the testimony for such purposes is belied by the language of his arguments (i.e., the testimony will show Defendant "*responds* to . . . verbal opposition with physical force" and "act[s] aggressively . . . *in response* to . . . conduct challenging or criticizing him" (emphasis added)), which reveals his intent to use the testimony as habit evidence.  "Habit 'describes one's regular response to a repeated specific situation.' Fed. R. Evid. 406 advisory committee note (describing conduct that qualifies as habit as 'semi-automatic')." *U.S. v. Angwin,* 271 F.3d 786, 799 (9th Cir. 2001) (overruled on other ground as stated in *U.S. v. Lopez,* 484 F.3d 1186, 1210-11 (9th Cir. 2007) (en banc)).  "Evidence of a person's habit . . . may be admitted to prove that on a particular occasion the person . . . acted in accordance with the habit or routine practice." Fed. R. Evid. 406.  "The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness."  *Id*.  "A district court's ruling on whether proffered evidence qualifies as habit evidence under Federal Rule of Evidence 406 is highly fact specific . . . . [¶] . . . In deciding whether certain conduct constitutes habit, courts consider three

16

factors: (1) the degree to which the conduct is reflexive or semi-automatic as opposed to volitional; (2) the specificity or particularity of the conduct; and (3) the regularity or numerosity of the examples of the conduct." *Angwin, supra,* 271 F.3d at 798-99 (citing *Weil v. Seltzer,* 873 F.2d 1453, 1460 (D.C. Cir. 1989); *Simplex, Inc. v. Diversified Energy Sys., Inc.,* 847 F.2d 1290, 1293-94 (7th Cir. 1988)). "The burden of establishing that certain conduct qualifies as evidence of habit falls on the party wishing to introduce the evidence. [Citation.] Most importantly . . . , because 'Rule 406 is an exception to the general exclusion of character evidence under the Federal Rules, . . . courts are somewhat cautious in admitting the evidence. [Citation.]" *Angwin, supra,* 271 F.3d at 799.

Here, Plaintiff has failed to meet his burden of establishing the testimony at issue qualifies as evidence of Defendant's habit. First, Plaintiff has offered no argument or evidence to suggest Defendant's interactions with Hare, Ziegenbein and Stuckey showed conduct that was reflexive or semi-automatic in nature.[5] A habit is reflexive if "it involves a 'person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time.' " *U.S. v. Al Kassar,* 660 F.3d 108, 123 (2d Cir. 2011) (citing Fed. R. Evid. 406 (1972 Proposed Rules)). That an individual "always wore his seat belt, regardless of whether he was the driver or a passenger and regardless of the length of the trip," is evidence of reflexive conduct. *Babcock v. General Motors Corp.,* 299 F.3d 60, 66 (1st Cir. 2002). By contrast, interactions Defendant purportedly had with less than a handful of people on a few occasions do not come close to showing reflex. *See Leonard v. Nationwide Mut. Ins. Co.,* 499 F.3d 419, 442 (5th Cir. 2007). Defendant has presumably interacted with hundreds, if not thousands, of people over the course of his life, and his aggression toward those who verbally challenge or criticize him is an act of volition, not a reflexive or semi-automatic response. Moreover, despite Plaintiff's implication to the contrary, the circumstances surrounding each incident were different and unique, meaning the incidents, collectively, are insufficient to establish the existence of a specific situation allegedly

---

[5] The descriptions of the incidents have been the subject of a redaction request and are contained in a transcript of proceedings that has since been sealed. Accordingly, the Court will not describe the incidents in any detail within this order.

triggering Defendant's aggression, even though all of the incidents appear to have involved some sort of confrontation between Defendant and a third party.  *Compare Perrin v. Anderson,* 784 F.2d 1040, 1046 (10th Cir. 1986) (testimony by four police officers of five separate incidents in which plaintiff reacted with extreme aggression toward uniformed police officers, with proffer of testimony from four other officers, was admissible as evidence of habit because the testimony "established that [plaintiff] invariably reacted with extreme violence to any contact with a uniformed police officer" and "plaintiff offered no evidence of any peaceful encounter between [himself] and the police").

Second, Plaintiff has provided no argument or evidence going to the specificity or particularity of Defendant's previous conduct.  Plaintiff has adequately explained the substance of the proffered testimony, but fails to explain to any degree of satisfaction how the testimony "describe[s] [Defendant's] conduct with sufficient particularity to be probative of whether he acted in conformity with that general practice," *Angwin, supra,* 271 F.3d at 800, at the time of the alleged misconduct.  That is, Defendant offers no compelling explanation as to how Defendant's interactions with Hare, Ziegenbein and Stuckey could constitute evidence of the same "habit" that led Defendant to "administer[ ] a control hold on [P]laintiff's left arm while blood was being drawn from his right arm," as is alleged in the complaint.  Defendant's conduct during the incidents referred to by Plaintiff is simply not analogous the misconduct alleged.  In the Court's view, the incidents illustrate nothing more than Defendant's general character traits, and are therefore inadmissible under Federal Rule of Evidence 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait").

Third, Plaintiff has failed to show the incidents were regular or numerous enough to support a finding of habit.  "It is only when the examples offered to establish such pattern of conduct or habit are 'numerous enough to base an inference of systematic conduct' and to establish 'one's regular response to a repeated specific situation' or, to use the language of a leading text, where they are 'sufficiently regular or the circumstances sufficiently similar to outweigh the danger, if any of prejudice and confusion,' that they are admissible to establish pattern or habit.  In determining

18

whether the examples are 'numerous enough' and 'sufficiently regular,' the key criteria are 'adequacy of sampling and uniformity of response,' or, as an article cited with approval in the Note to Rule 406 . . . puts it, on the 'adequacy of sampling' and the 'ratio of reactions to situations.' " *Wilson v. Volkswagen of America, Inc.,* 561 F.2d 494, 511 (4th Cir. 1977) (internal citations, footnotes omitted); *accord Mathes v. The Clipper Fleet,* 774 F.2d 980, 984 (9th Cir. 1985) (agreeing with *Wilson*).  Plaintiff has pointed to four incidents – spread out over a period of several years, no less – in which Defendant was faced with some sort of "verbal opposition" or "conduct challenging or criticizing him."  However, Plaintiff has provided no evidence to show these were the *only* such incidents involving Defendant.  Four incidents over a several-year period, without more, are insufficiently regular or numerous for a reasonable trier of fact to infer Defendant's conduct during the incidents was his habitual response to a repeated specific situation.  *See Thompson v. Boggs,* 33 F.3d 847, 853-55 (7th Cir. 1994) ("five unsubstantiated incidents of Officer Boggs' alleged excessive force, without any evidence of the total number of contacts Officer Boggs had with citizens or the number of arrests he performed, fail to satisfy the plaintiff's burden of demonstrating that Boggs' 'regular response to a repeated specific situation' was the 'systematic' use of excessive force").

Plaintiff does contend evidence of Defendant's interactions with animals demonstrates an "extreme fastidiousness," and that because Plaintiff urinated in Defendant's patrol car shortly before the alleged use of force incident, evidence of Defendant's alleged fastidiousness – coupled with his hostility to "conduct challenging" him – is relevant to the issues of whether Defendant (1) had motive to use force against Plaintiff and/or (2) "injured [Plaintiff] purposely rather than accidentally," and is therefore admissible as "other acts" evidence under Federal Rule of Evidence 404(b).[6]  This is an interesting argument but unpersuasive.  "Evidence of other acts may be admitted

---

[6] Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong or other act," although "not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," may nonetheless be admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(1), (2).

if: [¶] (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged." *U.S. v. Flores-Blanco,* 624 F.3d 912, 919 (9th Cir. 2010) (citing *U.S. v. Mayans,* 17 F.3d 1174, 1181 (9th Cir. 1994) (citations omitted)).  As the Court concluded above, the incidents adduced by Plaintiff are dissimilar to the misconduct alleged.  The incidents also do not tend to prove material points.

"[I]ssues of motive and intent are essentially irrelevant in [an excessive force] case.  The test 'in an excessive force case is an objective one.'  Thus, '[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.' "  *Morgan v. City of Marmaduke, Ark.,* 958 F.2d 207, 212 n. 2 (8th Cir. 1992) (citing *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989)).  The Court acknowledges that issues of motive and intent are potentially relevant to Plaintiff's claim for punitive damages.  *See Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) ("[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others").  However, the fact that Plaintiff urinated in Defendant's car (and told Defendant he would be taking Defendant to court) is itself evidence of motive and intent.  Plaintiff has not satisfactorily explained how any evidence of interactions Defendant might have had with *animals and third parties* could conceivably demonstrate the existence of a motive for or intent by Defendant to use excessive force against *Plaintiff*.  In the Court's view, such evidence would *not* demonstrate motive or intent, given these animals and third parties were not percipient witnesses to Plaintiff's arrest (or events giving rise to the alleged misconduct) and do not have any connection to this case. Under these circumstances, the contention that Defendant's aggression and extreme fastidiousness, as evidenced by his previous interactions, would help show Defendant had motive and intent to use force against Plaintiff is at worst an attempt to introduce inadmissible character evidence from

1   factually unrelated incidents and at best an underhanded way of arguing habit.  In fact, most of the

2   "other acts" arguments stated in Plaintiff's opposition are nothing more than habit arguments in

3   disguise.  As the Court has already explained, these arguments are entirely without merit.

4          Even if testimony regarding the incidents at issue were somehow admissible as other acts

5   evidence, the Court has discretion to exclude the evidence as being more prejudicial than probative

6   under Federal Rule of Evidence 403.  *U.S. v. Walls,* 577 F.2d 690, 696 (9th Cir. 1978).  This is a case

7   where the exercise of such discretion would be warranted.  Given the lack of similarity between the

8   circumstances surrounding Defendant's alleged misconduct and his conduct in the incidents adduced

9   by Plaintiff, evidence of the incidents has minimal probative value.  The risk of undue prejudice, on

10  the other hand, is significant.  Even assuming Plaintiff intends to use the testimony for a proper

11  purpose, the jury could use the testimony for an improper one (e.g., viewing the testimony as

12  evidence of character or habit).  One might argue the Court could minimize this risk by giving a

13  limiting instruction.  Limiting instructions, however, are not entirety curative, even if juries are

14  presumed to follow their instructions, *U.S. v Heredia,* 483 F.3d 913, 923 (9th Cir. 2007) (en banc).

15  Furthermore, allowing Plaintiff to introduce the testimony would take up much of the trial time.

16  Plaintiff would have to present the testimony of the witnesses one by one, and Defendant would

17  inevitably attempt to show the manner in which the incidents played out was distinguishable from

18  the facts at issue here.  This back-and-forth between the parties would create an additional risk of

19  misleading the jurors and distracting them from the central issues.  Accordingly, the Court finds the

20  risks of undue prejudice, consumption of time and misleading the jury support exclusion of the

21  testimony at issue, and Defendant's motions in limine #8, #9 and #10 shall be GRANTED.

22

23  *11. Motion in limine #11: Bifurcation* – Defendant further contends, "If the Court does not grant

24  Defendant's Motions in Limine 9 and 10, Defendant moves in limine for an order from the Court

25  bifurcating the trial into two phases, (1) determination of liability for alleged Fourth Amendment

26  violation and (2) determination of damages, determination of the appropriateness of punitive

27

28                                                       21

1   damages, and any amount of punitive damages which may be awarded."  Because the Court will

2   grant Defendant's motions in limine #9 and #10, motion in limine #11 is MOOT.

3

4   ***12. Motion in limine #12: Deposition video, audio and transcripts*** – Defendant further moves to

5   preclude "the use of video, audio, and/or transcripts of the June 8, 2012 examinations of Officer

6   Christopher Long and Sergeant Paul Preston . . . because the examinations failed to comply [with]

7   the requirements of Rules 28 and 30 of the Federal Rules of Civil Procedure for depositions and are

8   therefore inadmissible."  Federal Rule of Civil Procedure 28 provides in pertinent part:

9   "(1) ***In General***.  Within the United States or a territory or insular subject to United
    States jurisdiction, a deposition must be taken before: [¶] (A) an officer authorized
10   to administer oaths either by federal law or by the law in the place of examination;
    or [¶] (B) a person appointed by the court where the action is pending to administer
11   oaths and take testimony. [¶] (2) ***Definition of 'Officer'***.  The term 'officer' in Rules
    30, 31 and 32 includes a person appointed by the court under this rule or designated
12   by the parties under Rule 29(a)."

13   Fed. R. Civ. P. 28(a)(1); *see* Fed. R. Civ. P. 30(b)(5) (same requirement for oral depositions unless

14   the parties stipulate otherwise).  "A deposition must not be taken before a person who is any party's

15   relative, employee or attorney; who is related to or employed by any party's attorney; or who is

16   financially interested in the action."  Fed. R. Civ. P. 28(c).  Defendant contends – and Plaintiff

17   concedes – the examinations at issue were taken before Plaintiff's attorney, who was neither an

18   officer authorized to administer oaths nor a person appointed by the court.  Accordingly, the

19   examinations could not have constituted depositions as a matter of law and are therefore

20   inadmissible.  *Ott v. The Stipe Law Firm,* 169 F.R.D. 380, 381 (E.D. Okl. 1996).

21        Citing *Marlboro Products Corp. v. North American Phillips Corp.,* 55 F.R.D. 487 (S.D.N.Y.

22   1972) and *Sheppard v. Beerman,* 822 F.Supp. 931 (E.D.N.Y. 1993), *aff'd in part, vacated in part*

23   18 F.3d 147 (2d Cir. 1994), Plaintiff contends the failure to comply with Rule 28 should nonetheless

24   be excused and the examinations deemed admissible because "the policy informing FRCP 28(c) –

25   to ensure impartiality in the creation of the deposition record – is inapplicable when," as here, "the

26   deposition is tape recorded."  Not so.  As one district court has noted, the cases cited by Plaintiff

27

28                                                    22

"predate the 1993 Amendments to Rule 30.  The advisory committee explained that among the amendments, paragraph 5 was revised to 'require[ ] that all depositions be recorded by an officer designated or appointed under Rule 28 and to contain [ ] special provisions designed to provide basic safeguards to assure the utility and integrity of recordings taken other than stenographically.'  Fed. R. Civ. P. 30, advisory committee note.  The plain language of this rule is clear: absent a waiver, 'a deposition must be conducted before an officer appointed or designated under Rule 28.'  *Meacham v. Church,* 2010 WL 1576711 (D.Utah 2010) (unpublished), at *4.  That was not done here.

Naturally, Plaintiff contends Defendant waived the right to assert a disqualification on Rule 28(a) grounds.  As to the issue of waiver, Federal Rule of Civil Procedure 32 provides in pertinent part: "An objection based on disqualification of the officer before whom a deposition is to be taken is waived if not made: [¶] (A) before the deposition begins; or [¶] (B) promptly after the basis for disqualification becomes known or, with reasonable diligence, could have been known."  Fed. R. Civ. P. 32(d)(2).  Plaintiff claims, "Despite having advance knowledge of how the depositions would be recorded, based both on [ ] prior depositions and on advance telephone confirmation, [ ] [D]efendant did not object until the depositions were underway."  However, Plaintiff provides no evidentiary support for this statement, pointing only to arguments in his memorandum of points and authorities, which are not evidence.  Defense counsel Brande L. Gustafson, on the other hand, has provided a declaration under penalty of perjury wherein she testifies: "On June 8, 2012, the date noticed for Officer Long and Sergeant Preston's deposition, Plaintiff's counsel swore in the witnesses and operated the video recorder without a court reporter and/or videographer present to record the testimony or otherwise swear in the witnesses.  I was present as defense counsel Jim Weakley objected on the record to the qualifications of the 'officer' (Plaintiff's counsel) administering the oath and informed Plaintiff's counsel that it was Defendant's position that what was occurring was not a deposition."  The absence of corresponding evidence from Plaintiff makes this an uncontroverted issue the Court must resolve in favor of Defendant.  Accordingly, the Court finds no waiver of disqualification, and Defendant's motion in limine #12 shall be GRANTED.

1    ***13. Motion in limine #13* –** WITHDRAWN

2

3    ***14. Motion in limine #14: Probable cause* –** Defendant further contends – and Plaintiff does not

4    dispute – that attendant to the alleged misconduct, Plaintiff was arrested for and subsequently

5    convicted of violating the California Vehicle Code.  Defendant now moves to exclude "any and all

6    evidence, references to evidence, testimony or argument on any matters implying a lack of probable

7    cause to arrest Plaintiff or that such a lack of probable cause is a factor to consider in the excessive

8    force context," contending such evidence is barred by *Heck v. Humphrey,* 512 U.S. 477, 486-87, 114

9    S.Ct. 2364, 129 L.Ed.2d 383 (1994).  In opposition, Plaintiff contends *Heck* is not implicated and

10   that probable cause is relevant to the excessive force inquiry. Having reviewed the pleadings of

11   record and all competent and admissible evidence submitted, the Court agrees with Plaintiff.

12       In *Heck,* the Supreme Court held that "in order to recover damages for allegedly

13   unconstitutional conviction or imprisonment, or for other harm caused by actions whose

14   unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the

15   conviction or sentence has been reversed on direct appeal, expunged by executive order, declared

16   invalid by a state tribunal authorized to make such determination, or called into question by a federal

17   court's issuance of a writ of habeas corpus."  *Heck, supra,* 512 U.S. at 486-87.  "A claim for

18   damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not

19   cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district

20   court must consider whether a judgment in favor of the plaintiff would necessarily imply the

21   invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the

22   plaintiff can demonstrate that the conviction or sentence has already been invalidated."  *Id*. at 487.

23   The court gave the following example of a section 1983 action "that does not seek damages directly

24   attributable to conviction or confinement but whose successful prosecution would necessarily imply

25   that the plaintiff's criminal conviction was wrongful": "A state defendant is convicted of and

26   sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from

27

28                                    24

effecting a *lawful* arrest . . . . He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted . . . . [T]he § 1983 action will not lie." *Id.* at 487 n. 6 (emphasis original).

By contrast, successful prosecution of Plaintiff's excessive force claim would *not* necessarily imply the invalidity of his Vehicle Code conviction. In *Yount v. City of Sacramento,* 43 Cal.4th 885, 76 Cal.Rptr.3d 787, 183 P.3d 471 (2008), a case relying principally on *Heck*, the California Supreme Court approved of the following three-part test first proposed by the Court of Appeal to determine whether a judgment in favor of a plaintiff would necessarily imply the invalidity of his conviction: " 'First, the court must determine . . . what acts or omissions may have formed the factual basis of the plaintiff's [ ] conviction. Second, the court must ascertain what alleged misconduct by the officer forms the factual basis for the civil rights claim . . . . The final step is to consider the relationship between the plaintiff's acts . . . and the officer's alleged misconduct.' " *Id.* at 894. Defendant contends – and Plaintiff does not dispute – that Plaintiff pleaded no contest to violating Vehicle Code sections 23103 and 23103.5.[7] Section 23103 provides in pertinent part, "A person who drives a vehicle upon a highway in willful or wanton disregard for the safety of persons or property is guilty of reckless driving." Cal. Veh. Code, § 23103, subd. (a).[8] The complaint, in turn, alleged a claim of excessive force pursuant to 42 U.S.C. § 1983 premised on allegations that Defendant administered

---

[7] Plaintiff was initially charged with violating sections 23152 (driving under the influence), 16028 (driving without proof of financial responsibility) and 24250 (vehicle without lighting equipment).

[8] Section 23103.5 provides that "[i]f the prosecution agrees to a plea of guilty or nolo contendere to a charge of a violation of Section 23103 in satisfaction of, or as a substitute for, an original charge of a violation of Section 23152, the prosecution shall state for the record a factual basis for the satisfaction or substitution, including whether or not there had been consumption of an alcoholic beverage or ingestion or administration of a drug, or both, by the defendant in connection with the offense." Cal. Veh. Code, § 23103.5, subd. (a). The evidence submitted by Defendant shows the facts on which Plaintiff based his plea were that he "drove a vehicle upon a highway in willful or wanton disregard for the safety of persons or property caused by alcohol."

a control hold to Plaintiff's left arm while blood was being drawn from Plaintiff's right arm by a phlebotomist. "To succeed on a § 1983 claim, a plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federal constitutional or statutory right." *Patel v. Kent School Dist.,* 648 F.3d 965, 971 (9th Cir. 2011) (citing *Tatum v. City and County of San Francisco,* 441 F.3d 1090, 1094 (9th Cir. 2006)). "A Fourth Amendment claim of excessive force is analyzed under the framework set forth by the Supreme Court in *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). That analysis requires balancing the 'nature and quality of the intrusion' on a person's liberty with the 'countervailing governmental interests at stake' to determine whether the use of force was objectively reasonable under the circumstances. *Id.* at 396, 109 S.Ct. 1865. Determining whether a police officer's use of force was reasonable or excessive therefore 'requires careful attention to the facts and circumstances of each particular case' and a 'careful balancing' of an individual's liberty with the government's interest in the application of force. *Id.*; *see Deorle v. Rutherford,* 272 F.3d 1272, 1279-81 (9th Cir. 2001)." *Santos v. Gates,* 287 F.3d 846, 853 (9th Cir. 2002). It is evident, after comparing the elements of excessive force with the elements necessary to establish reckless driving in violation of section 23103, that the claims are not interrelated under the facts presented here. To prove excessive force, Plaintiff need not negate (or even address) any aspect of the offense for which he has already been convicted. Therefore, the *Heck* rule is simply inapplicable.

The Court might be inclined to conclude otherwise if Plaintiff had asserted a cause of action against Defendant sounding, for instance, in false arrest/false imprisonment, because in such a case the validity of Plaintiff's arrest would have been at issue. "The essential factual elements for false arrest by a peace officer without a warrant include: Plaintiff was arrested without a warrant, plaintiff suffered harm, and defendant's conduct was a substantial factor in causing the harm. [Citations.] Where it is alleged there has been arrest without process (i.e., a warrant), the burden is on the defendant to prove justification for the arrest. [Citations.]" *Dunseth v. City of Santa Ana,* 2005 WL

1427362 (Cal.App. 4 Dist. 2005) (unpublished), at *3.[9]   The affirmative defenses to a claim of false

arrest are set forth in California Penal Code § 836, which provides in pertinent part as follows: "A

peace officer . . . , without a warrant, may arrest a person whenever any of the following

circumstances occur: (1) The officer has probable cause to believe that the person to be arrested has

committed a public offense in the officer's presence. [¶] (2) The person arrested has committed a

felony, although not in the officer's presence. [¶] (3) The officer has probable cause to believe that

the person to be arrested has committed a felony, whether or not a felony, in fact, has been

committed."  Cal. Pen. Code, § 836, subd. (a).  It is undisputed Plaintiff did not commit a felony.

Thus, the only defense Defendant could conceivably assert to prove Plaintiff's arrest was not

wrongful would be to show Defendant had probable cause to believe Plaintiff had committed a

crime.  To controvert this defense, Plaintiff would be compelled to show Defendant had no probable

cause.  Judgment pursuant to such a showing would necessarily imply the invalidity of Plaintiff's

conviction because Plaintiff could not have been convicted had he not been arrested.

But Plaintiff has not alleged a cause of action against Defendant for false arrest; Plaintiff has

alleged a cause of action against Defendant for excessive force.  "Although an excessive force claim

is subject to a 'reasonableness' standard under the Fourth Amendment as is a false arrest claim, the

two claims require quite different inquiries. [Citation.] To evaluate an excessive force claim, [courts]

consider 'the severity of the crime at issue, whether the suspect poses an immediate threat to the

safety of the officers or others, and whether he is actively resisting arrest or attempting to evade

arrest by flight.' [Citation.] To evaluate whether the police had probable cause to make an arrest,

in contrast, [courts] consider the nature and trustworthiness of the evidence of criminal conduct

available to the police."  *Beier v. City of Lewiston,* 354 F.3d 1058, 1064 (9th Cir. 2004).  "Because

the excessive force and false arrest factual inquiries are distinct, establishing a lack of probable cause

to make an arrest does not establish an excessive force claim, and vice-versa."  *Id.*; *accord*

---

[9] The Court may cite unpublished California appellate decisions as persuasive authority. *See Employers Ins. of Wausau v. Granite State Ins. Co.,* 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003).

1   *Szalabawka v. Russo,* slip copy, 2011 WL 7776786 (W.D.Pa. 2011) at *13 ("[C]laims of excessive

2   force and false arrest implicate different aspects of the Fourth Amendment's 'reasonableness'

3   requirement: the probable cause requirement concerns the justification for a seizure while the

4   proscription against excessive force concerns the manner in which the seizure is carried out").  This

5   is especially so here, given Defendant is alleged to have applied force not in effectuating an arrest

6   of Plaintiff but in drawing blood from Plaintiff after Plaintiff had already been arrested.

7       Defendant further suggests that Plaintiff's ability to present argument or evidence to show

8   no probable cause should be precluded by his no contest plea to violating Vehicle Code § 23103.

9   Ordinarily, the Court would be inclined to agree.  "A plea of nolo contendere (or no contest) is

10  legally equivalent to a guilty plea[.]"  *People v. Mauldin,* 2012 WL 2020984 (Cal.App. 5 Dist. 2012)

11  (unpublished), at *2 (citing *People v. Warburton,* 7 Cal.App.3d 815, 820-21, 86 Cal.Rptr. 894 (1970)

12  (superseded on other ground as stated in *People v. Mendez,* 19 Cal.4th 1084, 1093, 81 Cal.Rptr.2d

13  301, 969 P.2d 146 (1999)).[10]  "[A] guilty plea constitutes an admission of every element of the

14  offense charged and constitutes a conclusive admission of guilt. [Citation.] It waives a trial and

15  obviates the need for the prosecution to come forward with any evidence. [Citations.] A guilty plea

16  thus concedes that the prosecution possesses legally admissible evidence sufficient to prove

17  defendant's guilt beyond a reasonable doubt.  Accordingly, a plea of guilty waives any right to raise

18  questions regarding the evidence, including its sufficiency or admissibility, and this is true whether

19  or not the subsequent claim of evidentiary error is founded on constitutional violations. [Citation.]"

20  *People v. Turner,* 171 Cal.App.3d 116, 125-26, 214 Cal.Rptr. 572 (1985).  "By pleading guilty, a

21  defendant 'waive[s] any right to question how evidence had been obtained just as fully and

22  effectively as he waive[s] any right to have his conviction reviewed on the merits.' [Citation.]" *Id*.

23  at 126.  Therefore, by pleading no contest, Plaintiff effectively admitted the sufficiency of evidence

24  establishing the offense and is no longer entitled to a merits review of evidentiary issues.  Probable

25

26      [10] Again, the Court may cite unpublished California appellate decisions as persuasive
    authority.  *See Employers Ins. of Wausau v. Granite State Ins. Co.,* 330 F.3d 1214, 1220 n. 8 (9th
27  Cir. 2003).

28                                        28

1  cause for the underlying arrest is an evidentiary issue removed from consideration by entry of such

2  a plea.  *People v. Devaughn,* 18 Cal.3d 889, 895, 135 Cal. Rptr. 786, 558 P.2d 872 (1977).

3        Officer Hamilton was on patrol in a marked car when he observed defendants Mark Allen

4  Devaughn and his brother Timothy Lewis Devaughn running between houses.  *Devaughn, supra,*

5  18 Cal.3d at 893-94.  Plainclothes officers Garcia and Barbara, who were part of a burglary unit,

6  responded to Hamilton's call for assistance, and Hamilton relayed his observation to them and gave

7  them a physical description of the defendants.  The neighborhood Hamilton was patrolling had seen

8  numerous burglaries in recent months, but at the time, the police had no information that a specific

9  burglary had occurred.  *Id.* at 894.  Garcia and Barbara located the defendants and questioned them

10  individually about why they were in the area.  One defendant stated they had walked to the

11  neighborhood; the other stated they had come by car.  One stated they had come to visit a friend; the

12  other did not know the friend's name.  Both defendants appeared nervous.  On these circumstances

13  the defendants were arrested and advised of their rights.  *Id.*  After the defendants were interrogated

14  at the police station, Mark Devaughn admitted he had broken into a house and incriminated his

15  brother. Timothy Devaughn then admitted he had committed a burglary.  *Id.* at 895.  The defendants

16  subsequently pleaded guilty to burglary in the second degree and were convicted.  *Id.* at 893.

17        On appeal the defendants contended their initial detentions and ensuing arrests were illegal.

18  *Devaughn, supra,* 18 Cal.3d at 893.  The California Supreme Court agreed: "It is clear that the [ ]

19  circumstances known to the officers before they arrested defendants fail to establish probable cause

20  to arrest either defendant for any crime.  'Cause for arrest exists when the facts known to the

21  arresting officer "would lead a man of ordinary care and prudence to believe and conscientiously

22  entertain an honest and strong suspicion that the person is guilty of a crime." [Citations.]' [Citation.]

23  The arresting officers in the instant case had no reason to believe that any crime had been recently

24  committed in the neighborhood. They possessed only general information that the neighborhood had

25  been experiencing a high number of burglaries.  Although they were entitled to rely on information

26  relayed to them by Hamilton [citations] . . . and had noted inconsistencies and nervousness in the

27

28                                                          29

responses of defendants to police questioning, the officers had no sufficient basis in support of a belief that a crime had been committed or that defendants were engaged in criminal conduct. The illegality of the arrests is thus manifest." *Id*. at 895.   Nevertheless, the court concluded that by virtue of the defendants' pleas, a probable cause challenge was not cognizable on appeal: "Notwithstanding the question of the legality of their arrests and the consequences which flowed therefrom, each defendant's guilty plea operated to remove such issues from consideration as a plea of guilty admits all matters essential to the conviction. [Citation.] Issues cognizable on appeal following a guilty plea are limited to issues based on 'reasonable constitutional, jurisdictional, or other grounds going to the legality of the *proceedings' resulting in the plea*. [Citations.]" *Id*. at 895-96 (emphasis added).

Like the Devaughns' guilty pleas, Plaintiff's no contest plea to charges arising from his arrest waived the right to assert Defendant had no probable cause to arrest him.  The fact Plaintiff pleaded to a different offense (reckless driving) than the ones for which he was initially arrested and charged (driving under the influence, etc.) does not alter this conclusion.  "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest . . . . [¶] . . . [A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. [Citations.] That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."  *Devenpeck v. Alford,* 543 U.S. 146, 152-53, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004). *Devenpeck,* which has been interpreted to hold that "[b]ecause the probable cause standard is objective, probable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect for *any* criminal offense," *Edgerly v. City of County of San Francisco,* 599 F.3d 946, 954 (9th Cir. 2010) (citing *Devenpeck, supra,* at pp. 153-55) (emphasis added), expressly overturned *Alford v. Haner,* 333 F.3d 972, 976 (9th Cir. 2003), which had reaffirmed long-standing Ninth Circuit precedent that probable cause for an arrest exists only if there was probable cause to believe the suspect had committed the offense invoked by the arresting officer or a closely related offense.  Under *Devenpeck*, Plaintiff's no contest plea effectively meant Defendant had probable

30

1   cause to suspect Plaintiff had been driving recklessly, and thus had probable cause to arrest Plaintiff,

2   even if Plaintiff happened to be arrested on different charges for which Defendant had no probable

3   cause. As a result, Plaintiff is foreclosed from litigating probable cause on appeal. *See Devaughn,*

4   *supra,* 18 Cal.3d at 896.   Given Plaintiff is foreclosed from litigating probable cause on appeal,

5   Plaintiff would ordinarily not be permitted to litigate probable cause in a civil action. *See McKinley*

6   *v. City of Mansfield,* 404 F.3d 418, 428 (6th Cir. 2005) (citing *Allen v. McCurry,* 449 U.S. 90, 103-

7   105, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)) ("As a general rule, a federal civil action brought under

8   § 1983 is not a venue for re-litigating issues that were decided in a prior state criminal case"). But

9   the analysis does not end there. The Court observed as follows in its April 27, 2012 in limine order:

> "California Vehicle Code § 23158 provides in pertinent part that certain licensed or certified individuals 'acting at the request of a peace officer may withdraw blood' from persons suspected of driving under the influence of alcohol 'for the purpose of determining the alcoholic content therein.' Cal. Veh. Code, § 23158, subd. (a). 'In *Schmerber v. California* (1966) 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, the United States Supreme Court held that an arrestee for driving under the influence may be required to submit to a blood test *against his will* provided that "the means and procedures employed in taking his blood respect [ ] relevant Fourth Amendment standards of reasonableness." (*Id.* at p. 768, 86 S.Ct. at p. 1834.) [¶] . . . [¶] The courts of this state have frequently summarized *Schmerber* as permitting warrantless *compulsory* seizure of blood for the purpose of a blood-alcohol test if the procedure (1) is done in a reasonable, medically approved manner, (2) is incident to a lawful arrest, and (3) is based upon reasonable belief that the arrestee is intoxicated. [Citations.]' *People v. Ford,* 4 Cal.App.4th 32, 35-36, 5 Cal.Rptr.2d 189 (1992) (emphasis added).   In other words, courts have drawn a distinction between *consensual* blood draws and *forced* blood draws, which are constitutionally permissible so long as the force employed in the draw is not unreasonable."

19   *Morris v. Long,* slip copy, 2012 WL 1498889 (E.D.Cal. 2012), at *9 (emphasis original). For the

20   forced blood draw at issue here to have comported with the requirements of the Fourth Amendment,

21   Defendant must have had probable cause to suspect Plaintiff was *driving under the influence.*

22   *Schmerber, supra,* 384 U.S. at 769-71; *see Mercer v. Department of Motor Vehicles,* 53 Cal.3d 753,

23   760, 280 Cal.Rptr. 745, 809 P.2d 404 (1991); *see also People v. Superior Court,* 6 Cal.3d 757, 762,

24   100 Cal.Rptr. 281, 493 P.2d 1145 (1972) (*Hawkins*). That Defendant might have had probable cause

25   to arrest Plaintiff for *some offense* is insufficient. As a matter of law, Plaintiff's no contest plea to

26   reckless driving simply conceded Defendant had probable cause to arrest Plaintiff and to suspect

27

28                                                   31

Plaintiff had been driving recklessly; the plea did not concede Defendant had probable cause to arrest Plaintiff on suspicion of driving under the influence. *See Turner, supra,* 171 Cal.App.3d at 125-26. The issue whether Defendant had probable cause to suspect Plaintiff was driving under the influence was thus not conclusively decided by Plaintiff's plea agreement, and Plaintiff is not foreclosed from raising that issue here to show the means and procedures employed by Defendant in drawing blood contravened the mandates of *Schmerber*. Accordingly, Defendant's motion in limine #14 shall be DENIED. However, the extent to which probable cause may be litigated at trial shall be LIMITED to the issue of whether there was probable cause to suspect Plaintiff was driving under the influence. Both parties shall be precluded from introducing argument or evidence to show the existence or absence of probable cause for (1) an arrest or (2) to suspect Plaintiff was driving recklessly, as these are issues that, if litigated successfully to judgment for Plaintiff, *would* implicate a *Heck* bar.

## V. DISPOSITION

Based on the foregoing, Plaintiff's motions in limine #3, 5, 6, 12 and 13 are GRANTED; Plaintiff's motions in limine #2, 4, 8, 10, 11, and 14 are DENIED; Plaintiff's motion in limine #9 is DENIED without prejudice. The Court reserves ruling on Plaintiff's motions in limine #1 and 7. (Plaintiff's motions in limine #15 and 16 are withdrawn.)

Defendant's motions in limine #7, 8, 9, 10 and 12 are GRANTED; Defendant's motions in limine #6 and #14 are DENIED. Defendant's motion in limine #11 is MOOT. (Defendant's motion in limine #13 is withdrawn.)

IT IS SO ORDERED.

Dated:   August 8, 2012

_____
CHIEF UNITED STATES DISTRICT JUDGE