1

2

3

4

5

6

7

8

9

## IN THE UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF CALIFORNIA

10

11

12

13

14

15

| | |
|---|---|
| ROBERT MORRIS, ) | 1:08-cv-01422-AWI-MJS |
| ) | |
| Plaintiff, ) | ORDER RE: ADMISSIBILITY OF |
| ) | *BOYD* EVIDENCE |
| v. ) | |
| ) | |
| OFFICER CHRISTOPHER LONG, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

16

17   The Court refers the parties to previous orders for a complete chronology of the proceedings.  On

18   August 6, 2012, defendant Christopher Long (hereinafter "Defendant") filed his trial brief.

19   Defendant, citing *Boyd v. City and County of San Francisco,* 576 F.3d 938 (9th Cir. 2009), argued

20   a police officer in an excessive force case may introduce extrinsic evidence of a plaintiff's previous

21   conduct (that is, conduct unknown to the officer at the time force was allegedly used) to support what

22   the officer may have perceived immediately prior to the use of force.  Defendant alleged as follows:

> "Two of Plaintiff's prior arrests ended in [a] forced blood draw.  One such blood
> draw Plaintiff refused to give blood, was belligerent and combative such that officers
> were required to restrain Plaintiff in order to take a blood sample.  Such information
> makes less probable Plaintiff's assertions that he was compliant and cooperative
> during the blood draw or that his behavior was more indicative of a victim of an
> assault and robbery and tends to support Officer Long's observation that Plaintiff
> responded in an aggressive fashion after it was requested that he calm down so the
> phlebotomist could draw his blood."

27

28

On August 12, 2012, plaintiff Robert Morris (hereinafter "Plaintiff") filed a response to Defendant's trial brief, contending the evidence referred to in Defendant's trial brief should not be admitted because this case is procedurally and factually distinct from *Boyd*. Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court agrees with Plaintiff.

The plaintiffs in *Boyd*, a wrongful death suit arising out of the alleged use of excessive force, were the mother and daughters of decedent Cammerin Boyd (Boyd). *Boyd, supra,* 576 F.3d at 942. On May 5, 2004, Boyd was shot and killed by Officer Paine of the San Francisco Police Department. Earlier that evening, Boyd had attempted two kidnappings within minutes of each other, assaulting both victims at gunpoint. The victims resisted and fled. One victim promptly contacted the police, resulting in a high-speed car chase. During the chase, Boyd leaned out the window of his SUV and fired twice at pursuing officers. Boyd finally stopped his vehicle and was surrounded by police officers, who approached the vehicle with guns drawn. As Boyd exited the vehicle, officers ordered him to put his hands up and get down on the ground. Witnesses testified Boyd put his hands on his head but did not get on the ground. Instead, he walked toward the officers and then back to the vehicle. When Paine perceived that Boyd had not fully complied with the commands but reached into the vehicle, Paine fired three times, striking Boyd twice and fatally injuring him. *Id*.

Two weeks before the incident, Oakland police had searched Boyd's vehicle during an investigative stop and discovered rap lyrics and a newspaper article about the murder of an Oakland police officer. *Boyd, supra,* 576 F.3d at 942. The rap lyrics, which Boyd admitted were his, advocated prostitution and the murder of police officers. On May 2, 2004, three days before the incident, Oakland police had arrested Boyd for recklessly driving his mother's new Mercedes-Benz through Oakland. The police had ordered him out of the car and commanded him to get on the ground while showing his hands and legs, which he did without assistance even though he had two prosthetic legs. Boyd's lower legs had been amputated in 1993 after he drove off the freeway and crashed into a light pole while attempting to evade a California highway patrol officer. *Id*. During the arrest, Boyd struggled with the officers as he was being handcuffed, calling them " 'filthy white

2

racists' " and repeated screaming at them to kill him.  *Id.*  At trial, the City of San Francisco was allowed to present all of the foregoing evidence, as well as testimony from a forensic psychiatrist who opined the circumstances surrounding Boyd's death led her to conclude he had been attempting to commit " 'suicide by cop' " and had purposely drawn police fire to accomplish this result.  *Id.* at 942-43.  The plaintiffs appealed following a defense verdict, contending the evidence was improper and that, as a result, it was an abuse of discretion for the district court to admit it.  *Id.* at 943.

The Ninth Circuit did not agree with this contention.  "The Boyd family alleged, and presented evidence at trial, that [Boyd] had been attempting to surrender, and had been leaning against [his] car for assistance in lowering himself to the ground when police shot him.  Officer Paine testified that he fired after [Boyd] ignored police commands to surrender and instead sat down on the dashboard of the SUV and reached both hands inside, as if to grab something.  In a case such as this, where what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of events over another is relevant and admissible. [Citations.]" *Boyd, supra,* 576 F.3d at 944.  The court reasoned: "Under the relevancy analysis prescribed by the Federal Rules, all of the challenged evidence was properly admitted, since it had a tendency to make a fact of consequence more or less probable. [Citation.] The Boyd family claimed that [Boyd] hesitated in obeying police commands to get down only because of his lack of mobility due to his prostheses. This fact is made less probable by evidence that three days prior, [Boyd] had exhibited a facile ability to get down on the ground without assistance, when he was arrested in Oakland after a similar high-speed pursuit.  On the other hand police assertions that [Boyd] was acting erratically, taunting police and goading them to shoot him instead of following police commands, is made more probable by [Boyd's] earlier statements to Oakland police, as well as evidence that he was on drugs at the time." *Id.*  The court further concluded: "[Boyd's] alleged resistance to the police is also made more probable by evidence, in the form of expert testimony, that his actions were consistent with an attempt to commit suicide by cop . . . . Evidence that [Boyd] wrote rap lyrics praising the murder of police officers also makes actions consistent with suicide by cop more probable, as the professional

3

literature indicates that individuals who attempt suicide by cop often harbor a deep hatred and resentment towards police officers. Additionally, the circumstances of the 1993 car crash, a traumatic and life-changing event in [Boyd's] life that could be tied to police action, made it more probable that [Boyd] resolved to place liability for his death on the police. Finally, [Boyd's] criminal history, particularly the two kidnapping attempts that provoked the high-speed chase and the potential sentence that he faced if prosecuted for those actions, made it more probable that [Boyd] was trying to provoke a police shootout, rather than trying to surrender." *Id*. at 944-45.

*Boyd* is not instructive here, at least not in the context identified by Defendant. The *Boyd* court found the decedent's prior conduct admissible because it was probative as to whether he was trying to commit "suicide by cop," as the defense had contended. Resolution of such an issue, given the plaintiffs' assertion the decedent was trying to surrender, required a reasonable trier of fact to assess the credibility of evidence going to two different versions of the alleged events. *See Boyd, supra,* 573 F.3d at 944-45. Accordingly, the defense was permitted to introduce evidence to support its "suicide by cop" theory. *Id.* Defendant has asserted no such theory. Instead, Defendant seeks to show that because Plaintiff was belligerent and uncooperative when his blood was drawn by police on previous occasions, he was more than likely belligerent and uncooperative at the time of Defendant's alleged misconduct. Defendant has provided no authority – and the Court's research reveals no authority – to suggest that what is essentially evidence of Plaintiff's character could conceivably be admissible for the purpose identified by Defendant. Accordingly, to the extent Defendant seeks to introduce evidence of Plaintiff's prior blood draws for the purpose stated in the trial brief, the Court will not permit it.


IT IS SO ORDERED.

Dated:    August 20, 2012             _____

                                CHIEF UNITED STATES DISTRICT JUDGE

4